# IN THE SUPREME COURT OF IOWA

No. 60 / 07–2059

Filed May 23, 2008

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**JEAN M. CURTIS,**

Respondent.

On review from the Grievance Commission.

The Iowa Supreme Court Grievance Commission recommends a one-year suspension of respondent's license to practice law in this state. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Jean M. Curtis, Guttenberg, respondent, pro se.

**WIGGINS**, **Justice**.

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Jean Curtis with the Grievance Commission of the Iowa Supreme Court alleging Curtis committed various violations of the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct.[1] The Commission found Curtis's conduct violated numerous provisions of the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct. The Commission recommended we suspend Curtis's license to practice law indefinitely with no possibility of reinstatement for a period of one year.

Because we find Curtis's conduct violated numerous provisions of the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct, we suspend Curtis's license to practice law indefinitely with no possibility of reinstatement for a period of one year.

## I. Prior Proceedings.

In February 2000 we admitted Curtis to practice law in Iowa by motion. She practices law in Guttenberg. She has one prior disciplinary action. In February 2004 we publicly reprimanded Curtis for her failure to recognize the inherent conflict in attempting to represent both parties in matters relating to a marriage dissolution and for communicating with a party who was represented by counsel when she did not have permission to speak directly to the represented party.

---

[1]The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers. The Iowa Rules of Professional Conduct govern all conduct occurring after its effective date.

On June 26, 2007, the Board filed a five-count complaint with the Commission alleging numerous violations of the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct. Count I alleged Curtis misapplied a client's fee. Count II alleged Curtis disclosed confidential information about a client. Count III alleged Curtis did not act with reasonable diligence and promptness when representing a client. Count IV alleged Curtis did not provide competent representation in an estate matter and failed to deposit an unearned fee into her trust account. Count V alleged Curtis failed to file a proper objection in a bankruptcy proceeding and then misrepresented the status of the matter to a client.

The Commission found the Board failed to prove the allegations contained in counts I, II, and III, but that the Board proved the violations alleged in counts IV and V. The Commission also found Curtis suffers from depression and attention deficit disorder. Both conditions are being treated with medication.

Based on her prior disciplinary action and her medical condition the Commission recommended: (1) Curtis's license to practice law in the state of Iowa be suspended indefinitely with no possibility of reinstatement for one year; (2) as a condition of reinstatement, Curtis present evidence from her treating healthcare provider that she is not suffering from any illness that would interfere with her ability to be attentive to her clients' legal needs and to competently handle the matters entrusted to her; (3) as a condition of reinstatement, Curtis be required to pass the Iowa Bar Exam; and (4) as a condition of reinstatement, Curtis be barred from practicing in probate or bankruptcy matters unless and until she associates with a practitioner having experience in those areas.

**II. Scope of Review.**

Our review of a report filed by the Commission is de novo. *See* Iowa Ct. R. 35.10(1). "Under this standard of review, we give weight to the factual findings of the Commission, especially with respect to witness credibility, but we find the facts anew." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 131 (Iowa 2004). Although we consider the discipline recommended by the Commission, we have the final decision regarding the appropriate sanction. *Id.* Therefore, the court can impose a greater or lesser sanction than what the Commission recommends.

The Board bears the burden of proving misconduct by a convincing preponderance of the evidence. *Id.* " 'This burden of proof is greater than that in a civil case but less than that in a criminal case.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Zenor*, 707 N.W.2d 176, 178 (Iowa 2005) (citation omitted).

**III. Analysis.**

On our de novo review of the record, we find the following as to each count.

**A. Count I.** Curtis represented Jeffrey Reinhardt in domestic relations matters. At some point during the representation, Reinhardt asked Curtis whether she could represent him in his Chapter 7 bankruptcy proceedings. Then, in April 2004 Reinhardt issued Curtis a check for $209. The Board claimed this money was earmarked for filing Reinhardt's bankruptcy petition. Curtis produced a letter she wrote to Reinhardt in which she stated she could not represent him in his bankruptcy proceeding and that she was going to apply the $209 check to his outstanding bill on the domestic relations matters. Reinhardt did

not testify. The Board claimed Curtis committed numerous ethical violations by not earmarking these funds for a bankruptcy proceeding.

The Commission determined the evidence presented by the Board did not meet its burden to prove by a convincing preponderance of the evidence that the check was earmarked for a bankruptcy proceeding. Factually, Curtis's letter refutes this allegation. Accordingly we agree with the Commission's findings on count I and find the Board has failed to prove its allegations of misconduct.

**B. Count II.** Curtis represented the father of children who had been removed from the father's home by the state. The Board alleged Curtis told a department of human services (DHS) representative that the next time they went to court Curtis was going to put witnesses on the stand to testify negatively about her client. The Board also alleged Curtis told a DHS representative that her client was drunk many times when Curtis called, and she felt DHS should have her client submit to urine tests. If the Board's allegations are true, Curtis may have violated the confidences of her client. Curtis not only denied these allegations, but presented evidence showing personal animus between herself and DHS representatives.

The Commission determined the evidence presented by the Board did not meet its burden to prove by a convincing preponderance of the evidence that the conversations as alleged took place. We agree. Accordingly, we find the Board has failed to prove its allegations of misconduct as alleged in count II.

**C. Count III.** Curtis was appointed to represent a client on an appeal in a postconviction relief action on July 20, 2005. On August 19 she received a delinquency notice from the clerk of the supreme court for failing to file and serve a combined certificate. On November 21 she

received another delinquency notice from the clerk for failing to pay or request a waiver of the docketing fee. On December 20 she received a notice from the court that unless a docket fee was paid or waived within eighteen days after service of the notice, the appeal would be dismissed. The clerk eventually dismissed the appeal.

On January 9, 2006, Curtis filed an application to reinstate the appeal. On February 2 we reinstated the appeal. On May 15 the clerk issued another notice of default for failure to file and serve the appellant's proof brief. Curtis requested additional time to file the brief, which we granted.

On September 8 the clerk issued another default notice for Curtis's failure to file and serve the appellant's proof brief. On October 6 the clerk dismissed the appeal due to Curtis's failure to file the proof brief. Curtis filed a motion to enlarge time for filing the proof brief. On December 11 we treated her motion as a motion to reinstate the appeal and reinstated the appeal.

On March 16, 2007, the clerk issued another notice of default for Curtis's failure to file and serve the deferred appendix. Curtis eventually filed the appendix. The State moved to strike the appendix. On June 12 we entered an order striking the appendix and requiring Curtis to file an amended appendix along with eighteen copies of an amended brief.

The Board alleged Curtis's conduct in handling the appeal violated various rules of the Iowa Rules of Professional Conduct. The Commission found the evidence presented by the Board was insufficient to carry the Board's complaint because all the required filings are current and the matter is yet pending. We disagree.

The result obtained by an attorney for a client is not a defense to a violation of an ethical rule. An attorney's failure to meet appellate

deadlines constitutes a violation of rules 32:1.1 (failing to provide competent legal representation to a client), 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 668–69 (Iowa 2007). Additionally, rule 32:3.2 requires a lawyer to make reasonable efforts to expedite litigation consistent with the interests of the client.

Curtis's conduct in this appeal was deplorable. Instead of meeting the deadlines required by our court rules, she used the clerk's office as her private tickler system. We have previously stated, using the clerk's office as a private tickler system violates rules DR 6–101(A)(3) (a lawyer shall not neglect a client's legal matter), DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law) of the Iowa Code of Professional Responsibility for Lawyers. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 399 (Iowa 2005). Under the Iowa Rules of Professional Conduct, this very same conduct violates rules 32:1.1 (failing to provide competent representation), 32:1.3 (failing to act with reasonable diligence and promptness), 32:3.2 (failing to make reasonable efforts to expedite litigation consistent with the interests of her client), and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

**D. Count IV.** Curtis acted as the attorney for the Estate of David J. Wilson. She opened the estate on October 8, 2003. On June 2, 2005, Curtis filed an unsigned inventory. On July 26 she filed an inventory signed only by her. Based on the later inventory, Curtis filed an

application for her fees and for those of the executor. The executor was the sole beneficiary of the estate and questioned Curtis as to why she needed to take a fee. Curtis did not give a reason. Curtis told the executor she would only take half the attorney fee and deposit the rest in her trust account. The court approved a fee of $11,841.51 for Curtis and a fee of $11,841.51 for the executor. Curtis did not deposit the fee in her trust account and took the entire fee.

In spring 2006 Curtis was not returning the executor's phone calls. The executor became concerned that Curtis was not handling the estate properly. The executor contacted another attorney to take over the legal matters of the estate. The executor sent a letter to Curtis that terminated her employment as the estate's attorney and informed Curtis another attorney would handle the estate from that point forward. The executor instructed Curtis to forward the estate file and all fees to the new attorney.

The attorney who took over the estate reviewed the file and discovered the estate was relatively simple to probate. Curtis did not send the fees with the file. The new attorney sent Curtis several letters trying to ascertain where the funds were located. After several unanswered letters, Curtis met with the new attorney and offered the explanation that her office secretary had embezzled money from her trust account so Curtis did not put the fees in that account because the secretary had access to that account. Instead, Curtis explained, she put the fees in a savings account. After more requests by the new attorney for the money, Curtis responded by letter stating:

> The money is no longer in the account. I'm in the process of tracking the money. From the time I became aware of the totality of the money taken from the business, the Firm's accounts were transferred to John McGrand and then back

to my office. We are still in the process of investigating this matter. I do not have $11,841.51 and I am seeking a loan to repay the estate.

Curtis eventually refunded the fees; however, the checks she issued to the new attorney were not drawn from a trust account. Curtis admitted she did not promptly refund the fees as ordered by the court. An audit of her trust account by a client security auditor for this court did not produce any evidence that money had been taken from Curtis's trust account through embezzlement.

Further problems with Curtis's handling of the estate were revealed when the new attorney began to work on the estate file. The inventory filed by Curtis had improper valuations of the assets, causing the court to award excessive fees. Additionally, the inheritance tax return was not filed as of spring 2006, when it should have been filed in July 2004. Curtis never filed tax returns for the estate.

To remedy the problems created by Curtis, the new attorney obtained an order from the court rescinding the prior court order allowing attorney and executor fees. This action was important because if the executor waived her fee and took as a beneficiary, the amount she would receive would not be subject to personal income tax. After obtaining the order rescinding the prior court order allowing fees, the new attorney had to probate the estate as if nothing was done on the estate.

The Board confronted Curtis with these deficiencies in probating the estate at the hearing. Curtis acknowledged she knew little about probating an estate and even less about taxes.

The manner in which Curtis probated the estate prior to July 1, 2005, violated the Iowa Code of Professional Responsibility for Lawyers, specifically, DR 1–102(A)(5) (engaging in conduct that is prejudicial to the

administration of justice), DR 6–101(A)(1) (handling a legal matter which the lawyer knows or should know that the lawyer is not competent to handle without associating with a lawyer who is competent to handle it), DR 6–101(A)(2) (handling a legal matter without adequate preparation under the circumstances), and DR 6–101(A)(3) (neglecting a client's matter). Additionally, her conduct after July 1, 2005, violated the Iowa Rules of Professional Conduct, specifically, rules 32:1.1 (failing to provide competent legal representation to a client), 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), 32:1.4(a)(3) (failing to keep a client reasonably informed about the status of a legal matter), 32:1.4(a)(4) (failing to promptly comply with reasonable requests for information), and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

Under the Iowa Code of Professional Responsibility for Lawyers a lawyer should not represent a client when the lawyer knows that she is not competent to handle the matter. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 723 N.W.2d 439, 441 (Iowa 2006). Under the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct, when an attorney agrees to represent a client, the attorney is required to act competently with reasonable diligence and promptness in representing her client. Curtis's conduct in probating the estate was more than mere negligence. It appears that her incompetence, procrastination, and failure to communicate with her client in every aspect of the representation stemmed from her indifference to advance the interests of her client when action was required. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 552 (Iowa 2004).

Curtis's conduct regarding the taking of her fee occurred after July 1, 2005, and is governed by the Iowa Rules of Professional Conduct. Curtis's misrepresentation to her client that she would only take one-half of the fee, when she in fact took the entire fee, violated rule 32:8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Moreover, Curtis's failure to deposit the fee award in the trust account violated rule 32:1.15(c) (requiring an attorney to deposit unearned fees into the trust account). Under the probate rules in effect at the time the court awarded her fees, Curtis could only take one-half of the fees when the estate filed the inheritance tax return and the other half at the time of closing the estate. While she represented the estate, the estate never filed the return; therefore, she was not entitled to any fee.

Additionally, Curtis inflated the value of the estate's assets on the inventory. We do not believe she purposefully inflated the value, but did so due to her lack of knowledge regarding the probating of estates. Because Curtis inflated the values, the court ordered fees in excess of those allowed by law. *See* Iowa Code § 633.197 (limiting fees for all sums in an estate over five thousand dollars to two percent of the gross assets). Accordingly, she violated rule 32:1.5(a) by taking an excessive fee.

Finally, we believe Curtis's handling of the estate by leaving it open for a protracted period of time, together with the numerous violations in doing so, constituted conduct prejudicial to the administration of justice and violated rule 32:8.4(d).

**E. Count V.** Curtis represented Shelley LeGrand with respect to her and her daughter's claim against Kevin Harbaugh. On December 19, 2002, Harbaugh filed for bankruptcy. On December 20 LeGrand and her daughter obtained a $25,000 judgment against Harbaugh for an

intentional tort. The bankruptcy attorney for Harbaugh listed LeGrand, in care of Curtis, as a creditor and the court sent Curtis notice of the bankruptcy. Curtis denied she received this notice when it was filed, but obtained it sometime after she contacted the bankruptcy attorney's office on April 1, 2003. Curtis offered the problems with the mail delivery in her small town as an explanation for why she did not receive the notice earlier.

Objections to the discharge of debt in bankruptcy were due on April 11. Curtis prepared an objection on the grounds the debt was not dischargeable because it arose from an intentional tort. Instead of filing an original with the clerk, Curtis faxed the objection to the clerk's office. That same day, the clerk notified Curtis that the rules did not allow her to fax a pleading. The clerk told Curtis she could either get court permission to file via fax or arrange to have a hard copy delivered that day. Curtis did neither. Curtis claimed she did not get the clerk's message until after the bankruptcy office closed because she was either in mediation or in court all day.

On April 16, after the time had expired to file an objection, Curtis filed a request for an extension of time to file an objection. The bankruptcy court denied the request. Curtis appealed the court's decision to the Bankruptcy Panel of the Eighth Circuit Court of Appeals. The appeals court held the clerk properly declined to accept the faxed pleading, and the bankruptcy court properly denied the extension. The appeals court left open the option for Curtis to file a complaint objecting to the discharge based on her claim she did not receive proper notice of the bankruptcy proceedings. Curtis told LeGrand she filed such a complaint when in fact she had not. Curtis admits she made a mistake by not properly filing the original objection to the discharge of the

LeGrand judgment, and that mistake is what led to all of the problems with the representation.

At some point during the representation, LeGrand sent a letter to Curtis requesting she refund LeGrand's money and return her entire file. LeGrand testified Curtis failed to return the file despite Curtis's statements to LeGrand that the entire file had been returned to her. LeGrand allowed Curtis to continue representing her after Curtis told her the complaint to the bankruptcy court had been filed and everything was under control. Curtis sent LeGrand documents purporting to be a complaint objecting to the discharge of the proceedings due to a lack of proper notice.

Due to her own dissolution, LeGrand filed for bankruptcy. While working with her bankruptcy attorney, they discussed the judgment against Harbaugh. There was a concern as to whether the judgment would have to be listed as an asset in LeGrand's bankruptcy proceeding. The bankruptcy attorney checked the docket of Harbaugh's bankruptcy proceeding and informed LeGrand that Curtis did not file the complaint based on her improper notice claim. The docket also indicated LeGrand's judgment against Harbaugh had been discharged in bankruptcy, and the proceeding was closed. The bankruptcy attorney notified Curtis of these facts on June 16, 2005.

Curtis's failure to file the objections and pursue the improper notice complaint violates DR 6–101(A)(2) (handling a legal matter without preparation adequate in the circumstances), DR 6–101(A)(3) (neglecting a client's matter), DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (engaging in other conduct that adversely reflects on the fitness to practice law).

We also find Curtis intentionally misrepresented to LeGrand that she filed the improper notice complaint. This conduct violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (engaging in other conduct that adversely reflects on the fitness to practice law), DR 7–101(A)(2) (intentionally failing to carry out a contract of employment), DR 7–101(A)(3) (intentionally prejudicing or damaging a client during the course of the professional relationship).

The Board also alleged, and the Commission found, Curtis violated DR 6–101(A)(1) (handling a legal matter which the lawyer knows or should know the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it), and rules 32:8.1 (dishonesty in regard to application to the bar), 32:8.4(a) (violating an ethical rule), 32:8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

Although Curtis failed to properly file the objection to discharge a debt and failed to file the complaint based on improper notice, the Board failed to produce sufficient evidence to sustain a violation of DR 6–101(A)(1). Curtis understood what needed to be done under the bankruptcy laws to protect her client's interest. Her failure to properly file the required documents may constitute neglect, but does not prove she handled a legal matter which she knew or should have known she was not competent to handle without associating with a lawyer who was.

We also find the Board failed to prove Curtis violated rules 32:8.1, 32:8.4(a), (c), and (d). All of Curtis's conduct took place prior to July 1,

2005.  In order to violate these rules the Board must prove Curtis's conduct took place after July 1, 2005.

### IV. Sanction.

In determining the appropriate sanction a lawyer must face as a result of his or her misconduct, we have stated:

> The goal of the Code of Professional Responsibility is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." When deciding on an appropriate sanction for an attorney's misconduct, we consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820 (Iowa 2004) (alteration in original) (citations omitted).

Mitigating factors include Curtis's personal illnesses. Curtis has been treated for depression. She blames some of her misconduct on her depression. She feels that she can control her depression with medication. Curtis has attention deficit disorder, which she also treats with medication. Personal illnesses, such as depression or attention deficit disorder, do not excuse a lawyer's misconduct but can be mitigating factors and influence our approach to discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Frerichs*, 718 N.W.2d 763, 768 (Iowa 2006).

The aggravating factors we must consider include multiple incidents of neglect. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 686 (Iowa 2006). Curtis's various actions throughout her handling of the three separate legal matters demonstrate that her neglect was not isolated in nature. Moreover, it is significant that Curtis's actions caused harm to others in terms of cost and delay to her

clients. *Id.* Another aggravating factor is Curtis's prior disciplinary sanction. *Frerichs*, 718 N.W.2d at 768. The final aggravating factor is her misrepresentation of the status of the bankruptcy proceeding to her client. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 97 (Iowa 2006).

While neglect alone ordinarily deserves a sanction ranging from a public reprimand to a six-month suspension, neglect compounded by other misconduct requires a more severe sanction. *Walker*, 712 N.W.2d at 686. Curtis's conduct is more than mere neglect. Her neglect not only caused a significant delay in processing her clients' matters, but also caused actual harm to her clients' interests. These factors and her misrepresentations to her clients make Curtis's violations serious.

A major concern we have with Curtis's conduct is her premature taking of a probate fee and her failure to deposit the fee into a trust account. Because the funds were not available when Curtis was asked to produce them, it is evident she converted the unearned fees for her personal use. Usually we revoke an attorney's license to practice law when that attorney deliberately converts a client's funds. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams*, 675 N.W.2d 530, 533 (Iowa 2004); *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994). However, we have stated when an attorney has " 'a colorable future claim to the funds, we will impose a lesser penalty.' " *McCann*, 712 N.W.2d at 97. The facts indicate Curtis had a colorable future claim to the funds she converted because they were to compensate her for services she was to perform for the estate. Therefore, we will not revoke Curtis's license to practice law.

In light of the multiple violations, the protection of the public, deterrence of similar misconduct by others, our duty to uphold the

integrity of the profession in the eyes of the public, the mitigating factors, and the aggravating factors, we conclude an indefinite suspension with no possibility of reinstatement for one year, as recommended by the Commission, is warranted in this case.

As an additional sanction, we require Curtis to pass the Multistate Professional Responsibility Examination as a condition of reinstatement. Iowa Ct. R. 35.12(1). The panoply of violations committed in this case and her prior disciplinary proceeding causes us to impose this additional sanction. Curtis's violations include taking on matters she is not competent to handle, neglecting client matters, lacking diligence in handling client matters, taking excessive fees, making misrepresentations to clients, committing trust account violations, accepting employment that constitutes a conflict of interest, and communicating with a represented party. We believe this array of conduct shows Curtis has a basic lack of understanding of our ethical rules.

Finally, as a further condition of reinstatement Curtis is required to undergo a comprehensive mental examination, which evaluates her fitness to practice law.

### V. Disposition.

We suspend Curtis's license to practice law in this state indefinitely with no possibility of reinstatement for one year. The suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12. Upon any application for reinstatement, Curtis must establish that she has not practiced law during the suspension period, she has in all ways complied with the requirements of Iowa Court Rule 35.13, and she has passed the Multistate Professional Responsibility Examination. In her application for reinstatement, Curtis must provide this court with

an evaluation by a licensed health care professional verifying her fitness to practice law.  Before obtaining this evaluation, Curtis shall submit the name of the proposed evaluator and the nature of the evaluation to the Board for its approval.  Curtis shall also comply with the notification requirements of Iowa Court Rule 35.21.  We tax the costs of this action to Curtis pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**

All justices concur except Baker, J., who takes no part.