# IN THE SUPREME COURT OF IOWA

No. 09–1074

Filed April 23, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

    Complainant,

vs.

**THEODORE R. HOGLAN,**

    Respondent.

_____

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends attorney receive a public reprimand. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, for complainant.

Robert G. Tully, West Des Moines, for respondent.

**PER CURIAM.**

This matter comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Disciplinary Board alleged the respondent, Theodore R. Hoglan, violated ethical rules by neglecting several client matters resulting in the dismissal of three appeals for failure to prosecute and the dismissal of one claim for failure to perfect an administrative appeal. The grievance commission found Hoglan violated the Iowa Rules of Professional Conduct and recommended a public reprimand. Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the commission, we find the respondent committed several ethical violations and suspend his license to practice law for thirty days.

### I. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 55 (Iowa 2009). The commission's findings and recommendations are given respectful consideration, but we are not bound by them. *Id.* The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006). As frequently stated, " '[t]his burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.' " *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)). Upon proof of misconduct, the court may impose a lesser or greater sanction than that recommended by the commission. *Id.*

## II. Factual Background.

The respondent has been practicing law in Iowa since 1983. During this time, he has engaged in private practice of a general nature. Four separate matters comprise the current disciplinary action. We will consider each charge separately.

**A. Viles Appeal.** In November 2006, Hoglan filed a notice of appeal on behalf of Joseph M. Viles, as Trustee of the Bear Creek Recreational Trust, in a case involving an administrative search warrant. On January 5, 2007, a notice of default was issued for failure to file and serve the combined certificate. The combined certificate was subsequently filed. On March 20, 2007, Hoglan filed an application for extension of time to file the page proof brief and designation of appendix. The request noted, *inter alia*, that Hoglan was suffering from serious back problems. On June 7, 2007, after two notices of default and one extension, Viles' appeal was ultimately dismissed for want of prosecution.

As a result of the dismissal, the board alleged Hoglan violated the following provisions of the Iowa Rules of Professional Conduct: 32:1.1 ("A lawyer shall provide competent representation to a client."), 32:1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."), 32:1.16(a)(2) ("[A] lawyer shall . . . withdraw from the representation of a client if . . . the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client[.]"), 32:3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."), 32:8.4(a) ("It is professional misconduct for a lawyer to . . . violate . . . the Iowa Rules of Professional Conduct[.]"), and 32:8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]").

**B. Kurth Appeal.** In 2006, Hoglan represented plaintiffs James and Peggy Kurth in a personal injury claim. After the jury returned a verdict in favor of the defendant, the respondent advised the Kurths to appeal. Hoglan filed a notice of appeal on October 27, 2006. On November 20, 2006, Hoglan filed the combined certificate in which he certified he had ordered the transcript, although he later stated he asked the court reporter to postpone preparation of the transcript because negotiations were ongoing. Thereafter, as in the Viles' case, the appeal languished. A request for an extension was denied, and on May 23, 2007, the clerk's office issued a notice of default for failure to file and serve the proof brief and to designate the appendix contents. When the default was not corrected, the court dismissed the Kurths' appeal for want of prosecution. As a result of the dismissal, the board alleged further violations of ethical rules 32:1.1, 32:1.3, 32:1.16(a)(2), 32:3.2, and 32:8.4(a) and (d). In addition, because it concluded Hoglan failed to communicate to the Kurths that their appeal had been dismissed, the board alleged Hoglan violated rule 32:1.4(a)(3) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter[.]") and rule 32:8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]").

**C. Keeler Appeal.** On December 29, 2006, the respondent filed a notice of appeal on behalf of his client, Kent Keeler. Keeler's employment-discrimination claim against his former employer had been dismissed by the trial court on summary judgment. After a series of continuances, on October 9, 2007, the appeal was ultimately dismissed for want of prosecution. Based on Hoglan's failure to prosecute his client's appeal, the board alleged he violated the same ethical rules enumerated in relation to the Viles' appeal.

**D. Stanley Disability Administrative Appeal.** In September 2003, Patrick Stanley hired the respondent to represent him with regards to his social security disability claim. After a series of denials of the claim, on October 18, 2006, Hoglan prepared a request for a review of the latest hearing decision. Although Hoglan asserted the document was delivered to the local social security office in Marshalltown, he was unable to produce any evidence the appeal had been perfected with the Appeals Council of the Office of Disability Adjudication and Review. Moreover, Hoglan did not look at the client file again until January 2008 when Stanley filed his complaint. The board concluded Hoglan's failure to timely file Stanley's appeal and his failure to respond to his client's subsequent inquiries violated ethical rules 32:1.1, 32:1.3, 32:1.4(a)(3), 32:1.4(a)(4) ("A lawyer shall . . . promptly comply with reasonable requests for information[.]"), 32:1.16(a)(2), 32:3.2, and 32:8.4(a) and (d).

### III. Prior Proceedings.

A hearing before a division of the grievance commission was held on February 20, 2009. The respondent testified on his own behalf about each of the four claims.

Hoglan testified he believed all four appeals to be meritorious. With regards to the three appellate cases dismissed for want of prosecution, Hoglan acknowledged that he failed to perfect the appeals. He also testified that he did not attempt to get the appeals reinstated because he did not believe, based upon his prior experience, that reinstatement would be successful. Hoglan disputed, however, that he failed to timely appeal Stanley's social security claim, asserting he believed the appeal documentation requesting the required transcript had been timely submitted to the social security office. Nevertheless, he acknowledged the appeal had not been processed. Because Stanley had obtained new legal representation,

Hoglan did not take any further action. Hoglan also disputed assertions that he failed to adequately communicate with his client, stating that, while he may not have returned every single phone call, he returned calls when it was appropriate to do so. He further disputed that he failed to appropriately pursue his client's claim, noting the transcript request, a necessary preliminary to the appeal, often takes more than a year. Because he believed he had made this request, he could take no further action until the transcript was received.

In an effort to explain his dilatory handling of these cases, Hoglan testified to his chronic back problems and the effect these conditions had on his legal practice. In 1973, while still in high school, Hoglan was diagnosed with Scheuermann's disease, a degenerative bone condition. This disease affected his thoracic spine, causing spinal deformity and chronic pain. In 1997, Hoglan was diagnosed with a herniated disk of the lower lumbar spine. Since then, Hoglan testified, he has undergone a series of back surgeries, unrelated to the Scheuermann's disease. From February 2007 through the summer of 2007, Hoglan underwent three back surgeries. It was during this period of time that all four cases ultimately dismissed were pending.

Hoglan also acknowledged that on January 2, 2007, he was publically reprimanded for neglecting two client matters resulting in the dismissal of an appeal to this court and the dismissal of an administrative appeal. Both dismissals occurred in May 2006.

In addition to Hoglan's testimony, the depositions of Joseph Viles, James Kurth, Peggy Kurth, Kent Keeler, and Patrick Stanley were entered into evidence. In pertinent part, Viles testified: (1) that he was not disappointed in Hoglan's representation, (2) that Hoglan notified him verbally of the dismissal prior to the board's letter to Viles informing Viles of the

board's investigation,[1] and (3) that he—Viles—continues to use Hoglan's services. The Kurths' testimonies were similar. Although James Kurth could not be sure when Hoglan notified them that their appeal had been dismissed, Peggy Kurth testified it was before they received the board's letter. Both testified they were not angry with Hoglan and that they continue to use his services. Keeler's testimony was also favorable to Hoglan. He testified that Hoglan notified him of the dismissal of his appeal prior to the board's letter of inquiry and that Hoglan admitted the dismissal was his mistake. Keeler also stated he was not angry with Hoglan.

Stanley's deposition testimony was also provided to the commission. In his deposition, Stanley testified he hired Hoglan in September 2003 to represent him in his attempt to obtain social security disability benefits. At that time, Stanley's initial request for benefits had been denied. In August 2004, the Department denied Stanley's requests for reconsideration of the denial. Hoglan then filed a request for a hearing by an administrative law judge (ALJ). The hearing was held in March 2006. After receiving the ALJ's denial on September 25, 2006, Stanley contacted Hoglan and asked him to file an appeal. Hoglan, Stanley stated, told him it was already done. After that, Stanley claimed Hoglan did little to communicate with him about his appeal, other than to tell him the appeal could take up to two years. Stanley further asserted that his numerous attempts at communicating with Hoglan in 2007 were, with the exception of two times, unsuccessful. In 2007, through his own inquiry with the Social Security Department, Stanley learned his appeal had not been processed, and the Department considered

---

[1]The Viles, Kurth, and Keeler matters were referred to the board pursuant to Iowa Rule of Appellate Procedure 6.19(3) (now rule 6.1006(1)(*b*) (2009)), which required the clerk of court to forward certified copies of the docket of dismissed appeals to the attorney disciplinary board. In the case of the Stanley matter, Stanley filed a complaint with the board.

his disability benefits claim to be closed or inactive. According to Stanley, his current attorney is trying to get the Department to waive the noncompliance in the filing of the appeal.

## IV. Ethical Violations.

We agree the board has proven Hoglan's conduct violated ethical rules 32:1.3 (requiring reasonable diligence and promptness), 32:1.16(a)(2) (requiring lawyer to withdraw from representation if the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client), 32:3.2 (requiring lawyer to make reasonable efforts to expedite litigation consistent with his client's interests), 32:8.4(a) (finding it misconduct to violate an ethical rule), and 32:8.4(d) (finding it misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice). In all four cases, the board has proven by a convincing preponderance of the evidence that Hoglan's failure to prosecute the aforementioned appeals evinces neglect. As we have frequently stated, neglect involves "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004).

We disagree, however, that the board has satisfactorily established that Hoglan failed to provide competent representation in the four cases. Under Iowa Rule of Professional Conduct 32:1.1, a lawyer is required to provide competent representation to a client. The rule further defines "competent representation" as a requirement the attorney possesses "the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Iowa R. Prof'l Conduct 32:1.1. A review of the comment to this rule reveals the focus of the rule is twofold: first, it addresses whether the lawyer has the requisite knowledge and skill to

handle the matter in question (legal knowledge and skill); and second, it concerns whether the lawyer has competently handled a matter through his inquiry into and analysis of the factual and legal elements of the problem (thoroughness and preparation). *See id.* cmts. [1], [5].

Although the board has established that Hoglan's handling of all four matters was dilatory, no evidence was presented that Hoglan did not possess the necessary legal knowledge and skill to complete the tasks or that he had not made a competent analysis of the factual and legal elements of the problems. *Compare Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 286 (Iowa 2009) (holding board failed to establish attorney did not provide competent representation when there was no evidence the attorney did not possess the necessary legal knowledge and skill to complete the task, only evidence that the representation had been slow), *with Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 700–01 (Iowa 2008) (finding attorney's improper preparation of probate matters and acknowledgment that she knew little about probating an estate and less about taxes, combined with procrastination and failure to communicate with her client, evinced incompetence under the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct). Therefore, we cannot conclude Hoglan violated rule 32:1.1.

We also agree with the commission that the board failed to establish Hoglan violated rules 32:1.4(a)(3) and 32:8.4(c) in his handling of the Kurth matter and rule 32:1.4(a)(4) in his handling of the Stanley matter. As previously noted, rule 32:1.4(a)(3) requires an attorney to keep his clients reasonably informed about the status of their matter, rule 32:1.4(a)(4) requires a lawyer to promptly comply with reasonable requests for information, and rule 32:8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or

misrepresentation. *See* Iowa Rs. of Prof'l Conduct 32:1.4(a)(3), .4(a)(4); 32:8.4(c).

The board contends Hoglan failed to keep the Kurths informed regarding the status of their appeal in violation of rule 32:1.4(a)(3) and that this failure was deceitful in violation of rule 32:8.4(c). The Kurths' depositions do not, however, support this claim. James Kurth testified that he could not remember when Hoglan notified them their appeal had been dismissed. However, Peggy Kurth testified Hoglan informed them before they received notification from the board. Moreover, neither Kurth complained Hoglan had not kept them reasonably informed about the status of their appeal. The board failed, therefore, to establish violations of these rules.

The board also contends Hoglan failed to promptly reply to Stanley's requests for information in violation of rule 32:1.4(a)(4). While it is clear Hoglan did not respond as frequently to his client's inquiries as his client would have liked, there was also credible evidence Hoglan did reply to reasonable requests for information. Therefore, we cannot conclude there is clear and convincing evidence Hoglan violated rule 32:1.4(a)(4).

### V. Sanction.

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, ___ N.W.2d ___, ___ (Iowa 2010). In determining an appropriate sanction, we look to several factors, including "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002). We

also consider mitigating and aggravating circumstances. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009).

The essence of the respondent's ethical violations is neglect of client matters. When attorney misconduct involves neglect, sanctions have typically ranged from a public reprimand to a six-month suspension. *Casey*, 761 N.W.2d at 61. " 'Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)). Another important consideration in determining the appropriate sanction is the resulting harm to the clients. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 656 (Iowa 2001) (noting "harm to a client is an aggravating circumstance that warrants a more serious sanction").

In this case, the commission recommended Hoglan receive a public reprimand. In support of this sanction, the commission noted Hoglan's prior excellent professional record and his recognition of his current wrongdoing. It also concluded the acts that resulted in Hoglan's prior public reprimand occurred during the same period of time as the current claims. The commission found that, had it been aware of the current matters that comprise the present complaint at the time of the commission's consideration of the prior matter, the result would most likely have been no different. Under these circumstances, the commission concluded a public reprimand was an appropriate sanction.

We do not agree that a public reprimand is the proper sanction in this case. Hoglan engaged in multiple instances of neglect. Even though three of Hoglan's clients do not hold his actions against him, all four clients were

harmed by the dismissal of their appeals. Moreover, with regard to Stanley's claim, Hoglan admitted that, even if Stanley can reapply for benefits, if successful, the date of onset of disability would be from the date of reapplication and not the initial application date. In other words, a failure to timely appeal could result in a loss of back benefits, thus resulting in additional harm to Stanley.

We also do not concur that a public reprimand is warranted because the current acts of neglect occurred within the same two-and-one-half-year time period that included the two acts of neglect that were the subject of the prior public reprimand. As noted previously, the prior public reprimand involved the respondent's disregard of default notices resulting in the dismissal of two appeals. In pertinent part, the reprimand advised the respondent:

> Your explanation that you suffered medical problems during the relevant time period was not an excuse, since Iowa R. Prof'l Conduct 32:1.[16](a)(2) requires withdrawal from representation when "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client."

The prior public reprimand was dated January 2, 2007, and filed March 21, 2007. Therefore, Hoglan was on notice of his obligation to withdraw from representation from at least March 21, 2007, when he knew he could not adequately represent his client due to a physical impairment. Yet, he thereafter allowed the Viles, Kurth, and Keeler appeals to be dismissed without withdrawing from his representation of these clients. The goal of deterring other lawyers from similar conduct would not be advanced if we ignore this fact.

We also consider Hoglan's health problems in formulating an appropriate sanction. While illnesses do not excuse misconduct, they can be mitigating factors and can influence our approach to discipline. *See Curtis,*

749 N.W.2d at 703 (holding depression a mitigating circumstance in a disciplinary case that resulted in a one-year suspension for neglect, client trust account violations, and dishonesty to client); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 96 (Iowa 2006) (holding severe depression and anxiety constituted mitigating circumstances considered in disciplinary action resulting in two-year suspension for multiple acts of misconduct, including neglect, misrepresentation, and client trust account violations). Therefore, we take Hoglan's severe back problems into account when imposing discipline.

Based upon all of these circumstances, we conclude suspension of the respondent's license, rather than a second public reprimand, is warranted and suspend Hoglan's license for thirty days. We will reinstate the respondent's license to practice law upon the expiration of the thirty-day suspension, subject to the limitations of Iowa Court Rule 35.12(2). *See* Iowa Ct. R. 35.12 (allowing for automatic reinstatement for suspension period not exceeding sixty days). However, given Hoglan's severe back problems, we conclude it necessary that Hoglan provide this court with evidence of his physical competency to practice law. Therefore, prior to any automatic reinstatement, Hoglan must provide an evaluation from a licensed health care professional verifying his fitness to practice law. *See McCann*, 712 N.W.2d at 97 (requiring evaluation of respondent who suffered from depression and anxiety).

Finally, we decline to impose a commission recommendation that we restrict Hoglan's practice by requiring him to have cocounsel of record in all appellate matters for a period of three years. As we have previously noted in prior cases, "neither the court nor the bar has effective machinery in place for such supervision." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 819 (Iowa 2007). It was not established that Hoglan's dilatory

handling of these appellate matters was related to his competence in appellate practice, but rather was, at the time, a result of his inability to handle legal practice in general due to his incapacitating back problems. Requiring Hoglan to provide medical verification of his fitness to practice law more appropriately addresses this issue.

## VI. Conclusion.

We suspend Hoglan's license to practice law for thirty days. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as outlined in Iowa Court Rule 35.22. Prior to any automatic reinstatement, Hoglan must establish his physical competency by providing this court with an evaluation from a licensed health care professional verifying his fitness to practice law. Costs are taxed to Hoglan pursuant to Iowa Court Rule 35.26. Automatic reinstatement shall not be ordered until all costs are paid. Iowa Ct. R. 35.12(2).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who takes no part.

This opinion shall be published.