# IN THE SUPREME COURT OF IOWA

No. 10–0255

Filed July 2, 2010

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**MARK A. TEMPLETON,**

Respondent.

___

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent has committed ethical infractions and recommends a two-year suspension of respondent's license to practice law. **LICENSED SUSPENDED.**

Charles L. Harrington and Amanda K. Robinson, Des Moines, for complainant.

Mark McCormick, Belin McCormick, P.C., Des Moines, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against the respondent, Mark A. Templeton, with the Grievance Commission of the Supreme Court of Iowa alleging Templeton committed various violations of the Iowa Rules of Professional Conduct. The commission found Templeton's conduct violated three provisions of the rules and recommended we suspend Templeton's license to practice law with no possibility of reinstatement for a period of two years. On our de novo review, we find Templeton violated one rule that requires us to impose sanctions. Accordingly, we suspend Templeton's license to practice law indefinitely with no possibility of reinstatement for a period of three months.

### I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 281 (Iowa 2010). The board has the burden of proving an attorney's ethical misconduct by a convincing preponderance of the evidence. *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission. *Id.*

### II. Findings of Fact.

On our de novo review, we find the following facts. Mark Templeton was fifty years old at the time of the grievance commission hearing. He is a graduate of Drake University Law School and became a licensed lawyer in January 1986. He practiced law until 2000. In 2000 Templeton took inactive status and began managing a newspaper

distribution business. In 2007 he distributed newspapers in four states and personally delivered the newspapers in the Des Moines area.

Through his newspaper deliveries, he became aware of a house in the Des Moines area where three single women lived. The owner of the house, Mary Doe, was eighty years old at the time of the incident that led to this proceeding. The tenants were Jane Roe, a twenty-four-year-old nurse, and Paula Poe, a twenty-one-year-old intern at a local church.[1]

Beginning in March 2007, Roe began to hear what she thought was someone walking across the crushed landscape rocks outside her master bedroom and bathroom windows. These noises began to occur more frequently throughout the month of March. In April, as Roe turned off the bathroom lights, she looked out the window and saw a man duck, run from the window to a silver car parked in the street, and drive away. Roe observed this activity happen four to six times. Each time she saw the man, she called the police.

After repeated reports by Roe and her roommates, the police set up a surveillance camera to try to capture images of the man. The camera malfunctioned and failed to record any images of the trespasser. After the surveillance camera set up by the police failed, one of Roe's family members installed a motion-detection camera used for deer hunting on a tree outside of the house in an attempt to capture images of the person coming to Roe's windows.

On June 24 Roe's family was staying with her at the house. In the morning, Roe and her family were planning to go to the airport and leave for a vacation. Around midnight, Roe was in her bedroom packing for the trip when she noticed the motion-detection camera was flashing,

---

[1]We have changed the names of the three women pursuant to Iowa Court Rule 21.28 in order to keep their identities confidential.

meaning something in front of the house had triggered it. Roe looked outside, but saw no one. Approximately five minutes later, a car pulled up in front of the house and turned its lights off but shortly thereafter sped away. After the car left, Roe and her family removed the camera from the tree, downloaded the pictures it had taken onto Roe's laptop computer, and discovered the camera had captured pictures of a white male with facial hair and glasses wearing a dark blue or black baseball hat, t-shirt, and khaki shorts. Roe notified the police she had pictures of the person looking into her windows.

At five o'clock the next morning, Roe's family left for the airport. On the way to the airport, the family passed a neighborhood gas station. Roe's brother observed a man filling his car with gas who fit the description of the man in the photographs the motion-detection camera had taken the night before. The family obtained the license plate number of the vehicle and relayed this information to the police. A detective traced the license plate back to the registered owner, who informed the detective he had recently sold the vehicle to a friend, Mark Templeton. The detective searched for Templeton's driver's license in the department of transportation's database and located what he believed was Templeton's license. The detective compared Templeton's driver's license photograph with the photographs captured by Roe and concluded they were a match.

After determining Templeton was the primary suspect, the detective and Templeton talked on the phone. The detective informed Templeton that he had been identified as the individual who had repeatedly been looking into Roe's windows. Templeton admitted he had visited the house approximately four or five times to look into Roe's windows while he was in the area delivering newspapers. Templeton told

the detective he has had a problem with window peeping his whole life and was relieved he had been caught because otherwise this behavior probably was not going to stop. Templeton also admitted he received sexual gratification from looking into Roe's windows but denied ever masturbating while doing so. We agree the evidence does not support a finding that Templeton was masturbating while looking into the windows.

Templeton promised to seek help and not engage in this type of conduct again. The detective informed Templeton he would talk with the victims before proceeding any further, but he could not guarantee the State would not pursue criminal charges.

During the time Templeton was looking in Roe's windows, Doe, Roe, and Poe were terrified. The women felt they were being stalked and were concerned the person looking into their windows was there to do them harm. Doe was so concerned about her safety she would call the police almost daily to inquire if the police had caught the perpetrator. Roe felt the perpetrator was invading her privacy and she was being taken advantage of as a woman. When she came home alone at night, she would call ahead so her roommates would be at the door when she arrived home. Roe also put blankets over her windows and began dressing and undressing in a closet that did not have any windows. Poe was so terrified by the incidents she quit her internship, moved home with her parents, and refused to participate in any proceedings against Templeton.

The State charged Templeton with one count of criminal trespass and one count of invasion of privacy. The county attorney later amended the charges to six counts of invasion of privacy—nudity, a serious misdemeanor, in violation of Iowa Code section 709.21 (2005). During

the course of the proceedings, Templeton sought treatment for the behavior resulting in his arrest.

On September 18 Templeton met with a sex-offender-treatment specialist who conducted a two-hour clinical interview, administered different risk assessment tests, and completed a risk assessment/amenability-to-treatment evaluation of Templeton. The specialist concluded Templeton presented a low level of risk for repeated abusive behavior and suggested that he participate in outpatient sex-offender treatment.

On November 7 Templeton pleaded guilty to all six counts of invasion of privacy—nudity. The district court sentenced Templeton to a period not to exceed one year for each of the six counts of invasion of privacy—nudity, to run consecutively, suspended this sentence, placed Templeton on probation for a period of six years, and ordered Templeton to complete sex-offender treatment as an added condition of probation.

Subsequently, the attorney disciplinary board filed its complaint against Templeton. The complaint invoked issue preclusion with regard to Templeton's conviction and alleged Templeton's window-peeping behavior and subsequent conviction violated Iowa Rules of Professional Conduct 32:8.4(a) (violating or attempting to violate the Iowa Rules of Professional Conduct), 32:8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects), and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

At the time of the hearing, Templeton had completed the first two phases of a four-phase sex-offender-treatment program. He is scheduled to complete the fourth phase of the treatment program in 2012. Templeton suffers from major depressive disorder, anxiety disorder,

voyeurism, and exhibitionism. He has met all expectations with regard to his compliance and performance during his course of treatment. Templeton's risk of recidivism is relatively low. In order to further his recovery and ensure he is complying with his probation, Templeton has voluntarily chosen to continue to wear his monitoring ankle bracelet.

On February 12, 2010, the grievance commission filed its findings of fact, conclusions of law, and recommendation. The commission concluded the board had proved Templeton's conduct violated Iowa Rules of Professional Conduct 32:8.4(a), (b), and (d). After weighing the aggravating and mitigating factors in the case, the commission recommended this court suspend Templeton's license to practice law for two years without any possibility of reinstatement. The commission further recommended upon Templeton's application for reinstatement he shall:

> 1) have the burden of proving he has continued to successfully comply with all conditions of his probation, including the sex offender treatment program; 2) have the burden of proving he is compliant with any medication regimens recommended by his counselors and physicians; 3) include with his application for reinstatement reports of two treating physicians regarding his progress and prognosis; and 4) have the burden of proving he has developed a "safety net" of assistance he can turn to should he encounter problems with depression or anxiety disorder while engaged in the practice of law.

Neither party appealed the commission's recommendation. Therefore, we are reviewing the recommendation pursuant to Iowa Court Rule 35.10(1).

### III. Analysis.

We have the authority to take disciplinary action against an attorney even though the attorney's license is inactive and the attorney is not actively engaged in the practice of law. *Iowa Supreme Ct. Bd. of Prof'l*

*Ethics & Conduct v. Mulford*, 625 N.W.2d 672, 679 (Iowa 2001). This is true even if at the time of the misconduct the attorney was not acting as a lawyer. *Id.* Thus, even though Templeton's law license was on inactive status and his conduct was unrelated to his representation of clients or any other facet of the practice of law, we still have the authority to sanction him upon a finding that he has engaged in misconduct in violation of the Iowa Rules of Professional Conduct.

The commission found Templeton violated Iowa Rule of Professional Conduct 32:8.4(b). Rule 32:8.4(b) provides, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). A comment to the rule states: "Illegal conduct *can* reflect adversely on fitness to practice law. A pattern of repeated offenses, even ones of minor significance when considered separately, *can* indicate indifference to legal obligation." *Id.* cmt. 2 (emphasis added). The mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law. 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 65.4, at 65-8 to 65-9 (3d ed. 2009 Supp.) [hereinafter "*The Law of Lawyering*"]. The nature and circumstances of the act are relevant to determine if the commission of the criminal act reflects adversely on the attorney's fitness to practice law. *Id.* § 65.4, at 65-8.

Oregon's DR 1–102(A)(2) provides: "[I]t is professional misconduct for a lawyer to 'commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law.' " *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991) (quoting Or. Code of Prof'l Responsibility DR 1–102(A)(2)). Oregon's rule, in effect at the time

the Supreme Court of Oregon decided *White*, is similar to our rule 32:8.4(b).

In applying DR 1–102(A)(2) to a criminal act of an attorney, the Supreme Court of Oregon noted:

> To some extent, every criminal act shows lack of support for our laws and diminishes public confidence in lawyers, thereby reflecting adversely on a lawyer's fitness to practice. DR 1–102(A)(2) does not sweep so broadly, however. For example, a misdemeanor assault arising from a private dispute would not, in and of itself, violate that rule. Each case must be decided on its own facts. There must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Id.* at 1265 (citation omitted). Oregon's analysis as to when a criminal act reflects adversely on a lawyer's fitness to practice law is reasonable and is the analysis we now adopt to apply in our own disciplinary cases.

Here, Templeton engaged in a pattern of criminal conduct by repeatedly looking into the victims' windows. In doing so, he violated Doe's, Roe's, and Poe's privacy, and caused them to suffer emotional distress. Although his conduct was compulsive, the record also establishes he intentionally and knowingly invaded the privacy of these women. This conduct also raises serious misgivings about whether Templeton understands the concept of privacy and respects the law protecting individuals' privacy rights. For these reasons, we find Templeton's criminal acts of invading Doe's, Roe's, and Poe's privacy reflects adversely on his fitness to practice law in violation of rule 32:8.4(b). *See In re Haecker*, 664 N.E.2d 1176, 1177 (Ind. 1996), *reinstatement granted*, 693 N.E.2d 529 (Ind. 1998) (finding attorney's

clandestine act of voyeurism of the occupants of his rental property constituted a crime that reflected adversely on his fitness as an attorney in other respects). Therefore, we agree with the commission that Templeton violated rule 32:8.4(b).

The commission also found Templeton violated rule 32:8.4(d). Rule 32:8.4(d) states: "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). This rule is similar to former DR 1–102(A)(5). DR 1–102(A)(5) provided that: "A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice." The debates of the ABA House of Delegates clearly indicate the purpose for incorporating this "prejudicial to the administration of justice" language from past rules, such as our former DR 1–102(A)(5), into the ABA's Model Rules of Professional Conduct was "to address violations of well-understood norms and conventions of practice only." 2 *The Law of Lawyering* § 65.6, at 65-16. We have adopted the ABA's proposed model rule 8.4(d) as our rule 32:8.4(d). Examples of conduct prejudicial to the administration of justice include paying an adverse expert witness for information regarding an opponent's case preparation, demanding a release in a civil action as a condition of dismissing criminal charges, and knowingly making false or reckless charges against a judicial officer. *See id.* at 65-16 to 65-18; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 90–91 (Iowa 2008) (holding falsely accusing a judge of being dishonest concerning a sentencing decision was conduct prejudicial to the administration of justice).

We have interpreted our former DR 1–102(A)(5) in a similar fashion. In *Iowa Supreme Court Attorney Disciplinary Board v. Howe,* we stated:

> Although "there is no typical form of conduct that prejudices the administration of justice," actions that have commonly been held to violate this disciplinary rule have hampered "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 123 (Iowa 1999)).

In the past, we have found the mere fact a lawyer was convicted of an OWI, third offense, was conduct prejudicial to the administration of justice. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 774 N.W.2d 496, 498–99 (Iowa 2009) (finding a lawyer's third OWI conviction was a violation of rule 32:8.4(d)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dull*, 713 N.W.2d 199, 204 (Iowa 2006) (finding a lawyer's third OWI conviction was a violation of DR 1–102(A)(5)). We now believe, under rule 32:8.4(d), the mere act of committing a crime does not constitute a violation of this rule because the rule does not simply prohibit the doing of an act. Rather, rule 32:8.4(d) specifically prohibits an act that is prejudicial to the administration of justice by violating the well-understood norms and conventions of the practice of law. To hold otherwise would be contrary to the intent of the ABA's Model Rules of Professional Conduct when it proposed the model rule, which we adopted in rule 32:8.4(d) without change. Therefore, we overrule our prior cases holding otherwise. Nevertheless, criminal conduct may violate other rules contained in our rules of professional conduct. *See, e.g.*, *Johnson*, 774 N.W.2d at 499 (finding a lawyer's third OWI conviction was a violation of the rule providing it is professional misconduct to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects); *Dull*, 713 N.W.2d at 204 (finding a lawyer's third OWI conviction was a violation of the rule providing a lawyer shall

not engage in conduct that adversely reflects on a lawyer's fitness to practice law).

Applying these principles to this record, there is nothing in the record to indicate Templeton's criminal conduct was prejudicial to the administration of justice by deviating from the well-understood norms and conventions of practice. Templeton complied with every order and time deadline in his criminal proceeding. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 699 (Iowa 2008) (holding failure to meet appellate deadlines in a postconviction relief action was conduct prejudicial to the administration of justice). He did nothing to impede the progress of his criminal proceeding and did not make any statements falsely impugning the integrity of the judicial system. Without any evidence showing Templeton's criminal conduct violated the well-understood norms and conventions of practice, the board did not prove a violation of rule 32:8.4(d). Consequently, the board has failed to prove Templeton's conduct violated rule 32:8.4(d).

The commission also found Templeton violated rule 32:8.4(a) providing: "It is professional misconduct for a lawyer to . . . violate . . . the Iowa Rules of Professional Conduct . . . ." Iowa R. Prof'l Conduct 32:8.4(a). It is true Templeton's violation of rule 35:8.4(b) violates the provision contained in rule 32:8.4(a) stating that it is professional misconduct for a lawyer to violate the Iowa Rules of Professional Conduct. The purpose, however, of including rule 32:8.4(a) in the Iowa Rules of Professional Conduct is to give notice to attorneys that they are subject to discipline for violating the rules. Iowa R. Prof'l Conduct 32:8.4, cmt. 1. The purpose of rule 32:8.4(a) was not to create a separate violation. Therefore, once the board proves a violation of the Iowa Rules of Professional Conduct, we will not discipline an attorney for

violating rule 32:8.4(a). Accordingly, although we find Templeton's conduct violated rule 32:8.4(a), we will not consider it as a separate violation for purposes of determining his sanction. In the future, the board need not file a complaint alleging a violation of rule 32:8.4(a) providing it is professional misconduct for a lawyer to violate the Iowa Rules of Professional Conduct. Proof of a violation of another rule is sufficient for us to consider the proper sanction.

**IV. Sanction.**

We have no standard sanction for misconduct of this type. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010). Nevertheless, we try to achieve consistency with our prior cases when determining the proper sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 767 (Iowa 2010). In determining the proper sanction

> "we consider the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and the court's duty to uphold the integrity of the profession in the eyes of the public. We also consider aggravating and mitigating circumstances present in the disciplinary action."

*Iowa Supreme Ct. Att'y Disciplinary Bd.* v. *Powell,* 726 N.W.2d 397, 408 (Iowa 2007) (internal quotation marks and alteration omitted) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 810 (Iowa 2006)). The goal of our disciplinary system is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." *Id.* (internal quotation marks omitted).

There are a number of aggravating circumstances in this case. First, we cannot overlook the serious, egregious, and persistent nature of Templeton's misconduct and the effect it had on his victims. *See, e.g., Comm. on Prof'l Ethics & Conduct v. Tompkins,* 415 N.W.2d 620, 623

(Iowa 1987) (stating, "the more egregious and persistent the conduct, the more debased the character of the offender"). From March through June 2007, Templeton visited the women's house and looked through their bedroom and bathroom windows on multiple occasions. Templeton's victims did not know if or when he would return, whether his conduct would escalate to violence, or if they were safe in or outside their home. The victims were terrified and one roommate quit her internship, moved out of the house, and refused to participate in any criminal proceedings just to escape Templeton's harassment.

Second, Templeton has admitted to a long history of compulsive and deviant sexual behavior. *See, e.g., Tompkins*, 415 N.W.2d at 623 (refusing to allow the compulsiveness of an attorney's illness to serve as a mitigating factor); *Comm. on Prof'l Ethics & Conduct v. Vesole*, 400 N.W.2d 591, 593 (Iowa 1987) (considering an attorney's history of morally reprehensible and compulsive acts when determining an appropriate sanction). Templeton admitted he has struggled with compulsive sexual behavior his whole life. He has admitted an addiction to pornography, together with a history of exposing himself and window peeping.

Third, Templeton was well aware of what he was doing, understood he could seek help for his problems, but chose not to do so until he was caught and confronted with the consequences of his actions. *See Tompkins*, 415 N.W.2d at 623 (considering the fact that an attorney knew he could get help for his problem but chose not to do so until faced with serious consequences when determining an appropriate sanction). In fact, when first confronted by the detective, Templeton was relieved and admitted his window peeping probably would not have stopped absent an intervention.

In addition to the aggravating circumstances, there are a number of mitigating circumstances present. Templeton's sex-offender-treatment specialist diagnosed Templeton with major depressive disorder, anxiety disorder, voyeurism, and exhibitionism for which he takes numerous prescription medications. "While illnesses do not excuse misconduct, they can be mitigating factors and can influence our approach to discipline." *Hoglan*, 781 N.W.2d at 287.

Additionally, Templeton continues to receive treatment for his disorders and illnesses. Templeton has complied with his treatment and his performance has met expectations. Templeton's risk of recidivism is relatively low and if he continues his treatment he may be able to continue to practice law. Moreover, Templeton has voluntarily chosen to continue to wear his monitoring ankle bracelet to ensure he complies with his probation. Thus, it appears Templeton is taking affirmative steps to rehabilitate himself and change his destructive behavior. Finally, Templeton has claimed responsibility and shown remorse for his conduct.

A review of prior cases involving sexual misconduct and/or other criminal convictions reveal that the length of the suspension varies from two months to three years based on the circumstances of the case. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blazek*, 739 N.W.2d 67, 70 (Iowa 2007) (revoking attorney's license due to enticement of a minor for sex and child pornography felony convictions); *Iversen*, 723 N.W.2d at 812 (suspending attorney's license for one year due to fraudulent practice felony and aggravated misdemeanor convictions); *Mulford*, 625 N.W.2d at 685–86 (citing cases imposing sanctions ranging from a public reprimand to a two-year suspension for misconduct resulting from criminal conduct); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v.*

*Thompson*, 595 N.W.2d 132, 136 (Iowa 1999) (suspending attorney's license for two months due to his convictions for two simple misdemeanors); *Steffes*, 588 N.W.2d at 125 (citing cases suspending attorneys' licenses for three months to three years for sexual misconduct); *Comm. on Prof'l Ethics & Conduct v. Barrer*, 495 N.W.2d 756, 760 (Iowa 1993) (suspending attorney's license for two years for making sexually obscene phone calls to teenage boys); *Tompkins*, 415 N.W.2d at 624 (suspending attorney's license for two years due to conviction for trespass in relation to attorney's unlawful entry into homes to search for women's undergarments); *Vesole*, 400 N.W.2d at 593 (suspending attorney's license for three years due to repeated convictions for indecent exposure); *Comm. on Prof'l Ethics & Conduct v. Floy*, 334 N.W.2d 739, 740 (Iowa 1983) (suspending attorney's license for eighteen months due to his conviction of telephone harassment in relation to sexually obscene phone calls made to young women).

Considering the nature of Templeton's violations, the protection of the public, deterrence of similar misconduct by others, Templeton's fitness to practice, our duty to uphold the integrity of the profession in the eyes of the public, aggravating circumstances, mitigating circumstances, and the sanctions we have given in similar cases, the appropriate sanction for Templeton's conduct is to suspend his license to practice law indefinitely with no possibility of reinstatement for three months. Prior to any application for reinstatement, Templeton must provide this court with an evaluation by a licensed health care professional verifying his fitness to practice law.

## V. Disposition.

We suspend Templeton's license to practice law in this state indefinitely with no possibility of reinstatement for three months. This

suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Prior to any application for reinstatement, Templeton must provide this court with an evaluation by a licensed health care professional verifying his fitness to practice law. Upon any application for reinstatement, Templeton must establish that he has not practiced law during the suspension period and has complied in all ways with the requirements of Iowa Court Rule 35.13. Templeton shall also comply with the notification requirements of Iowa Court Rule 35.22. We tax the costs of this action to Templeton pursuant to Iowa Court Rule 35.26.

**LICENSE SUSPENDED.**