# IN THE SUPREME COURT OF IOWA

No. 18–1719

Filed January 25, 2019

Amended January 25, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**BENJAMIN J. STANSBERRY,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends a suspension of an attorney's license to practice law for violations of ethical rules. **LICENSE SUSPENDED.**

Tara van Brederode and Amanda K. Robinson, for complainant.

Christopher A. Clausen of Clausen Law Office, Ames, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (the Board) brought a complaint against an attorney, alleging numerous violations of the Iowa Rules of Professional Conduct. The attorney stole a woman colleague's underpants from her home, rifled through and photographed her undergarments in her bedroom, and rifled through female colleagues' gym bags at the office to photograph their undergarments, all for his personal sexual gratification. A division of the Iowa Supreme Court Grievance Commission (the commission) found the attorney's conduct violated our ethical rules.

Based on the attorney's violation of our rules, the commission recommended we suspend his license to practice law for not less than ninety days. On our de novo review, we find the attorney violated three provisions of our rules. However, we disagree with the length of the recommended suspension. We suspend the attorney's license to practice law indefinitely with no possibility of reinstatement for one year from the date of filing this opinion. We also find that before reinstatement, the attorney must provide an evaluation from a licensed healthcare professional verifying his fitness to practice law.

## I. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010). The Board has the burden of proving ethical misconduct of the attorney by a convincing preponderance of the evidence. *Id.* This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in a civil case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006). While we give respectful consideration to the commission's findings and recommendations, they do

not bind us. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 281 (Iowa 2010) (per curiam). We may impose a sanction greater or lesser than the recommendation of the commission. *Id.*

## II. Findings of Facts.

On this record, we make the following findings of fact. Attorney Benjamin Stansberry received his license to practice law in Iowa in 2004. From 2010 until his resignation in 2016, he worked as an assistant county attorney in the Marshall County Attorney's Office. On August 22, 2016, Stansberry texted his colleague Jane Doe and asked if he could stop by her home with his three-year-old son. At the time, Stansberry was in a supervisory role at the Marshall County Attorney's Office, and Doe was an assistant county attorney under Stansberry's supervision. Doe was mowing her lawn when Stansberry arrived at her home.

Stansberry asked Doe if he could use her restroom and if Doe could watch his sleeping child who was in a stroller while he went inside. Doe agreed and waited outside with Stansberry's child. Stansberry was inside Doe's home for about five minutes, then came outside and left with his child. Doe continued doing yard work when she noticed a piece of cloth lying in the middle of her driveway. She soon realized the object was a pair of her underpants.

The same evening, Doe reported the incident to her boss, Marshall County Attorney Jennifer Miller. An investigation ensued, and the county attorney's office put Stansberry on administrative leave on August 23. When questioned by law enforcement about his actions, Stansberry denied taking anything from Doe's home, denied taking any photographs in Doe's home, and denied deleting any photographs from his mobile phone.

The investigation, however, led to a search of Stansberry's mobile phone. The search revealed Stansberry had deleted photographs showing

that he had entered Doe's bedroom and photographed her undergarment drawer, he had entered Doe's office and photographed undergarments in her gym bag, and he had entered the office of another colleague—Jane Roe—and photographed her undergarments in her gym bag as well. Stansberry officially resigned from the county attorney's office on August 26.

At the time he left the county attorney's office, Stansberry was the counsel of record for the state in approximately 145 cases. Miller found Stansberry had not followed the office protocol of note-taking and saving communications with defense attorneys in the office's software database. Thus, other county attorneys in the office spent considerable time trying to assess the status of Stansberry's cases. This resulted in dismissed charges because of missed deadlines, upset victims, and significant additional work for the county attorney's office and the district court clerk's office.

The state charged Stansberry with theft in the fifth degree and criminal trespass. Stansberry pled guilty to the charges and paid a $65 fine. The court also entered a no-contact order, with Doe as the protected party.

Doe and Roe both suffered mental and emotional trauma from Stansberry's actions. The incident so affected Doe that she resigned from her position at the Marshall County District Attorney's Office, sold her home in Marshalltown, and relocated to a different county.

On August 30, Stansberry self-reported his criminal trespass and theft charges to the Board. The Board filed a complaint on September 27. Responding to the complaint, Stansberry referenced the taking of the underpants, but failed to reference the photographs law enforcement had recovered from his mobile phone.

The Board charged Stansberry with four violations of the Iowa Rules of Professional Conduct: (1) rule 32:8.4(b) (criminal conduct), (2) rule 32:8.4(c) (dishonesty, fraud, deceit, and misrepresentation), (3) rule 32:8.4(g) (sexual harassment or other unlawful discrimination), and (4) rule 32:8.4(d) (conduct prejudicial to the administration of justice). At a hearing before the commission, Stansberry did not deny his conduct but argued he did not violate the ethical rules and asked for a public reprimand. The Board asked the commission to recommend a minimum sanction of license suspension for six months.

The commission found Stansberry violated all four ethical rules. It considered Stansberry's role as an assistant county attorney, his attempt to "minimize, downplay, and place blame elsewhere for his actions," and his lack of understanding of how his actions affected the victims, as aggravating factors. The commission found no mitigating factors. The commission recommended Stansberry's license to practice be suspended for a period of not less than ninety days.

Stansberry did not appeal the findings of the commission. Under our rules, if an attorney does not appeal the commission's recommendations, we review the record made before the commission de novo. Iowa Ct. R. 36.21(1). We will discuss additional facts as needed in the violations and sanction sections of this opinion.

### III. Violations.

**A. Whether Stansberry Violated Rule 32:8.4(b).** Rule 32:8.4(b) states, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]" Iowa R. Prof'l Conduct 32:8.4(b). Stansberry pled guilty to criminal trespass and theft in the fifth degree because of his actions on August 22, 2016. He does not dispute that he

committed criminal acts.  However, not all illegal conduct violates this rule. *Templeton*, 784 N.W.2d at 767.  The illegal conduct must reflect adversely on the attorney's "honesty, trustworthiness, or fitness as a lawyer in other respects."  Iowa R. Prof'l Conduct 32:8.4(b).

In *Templeton,* we adopted Oregon's analysis to determine when a criminal act reflects adversely on a lawyer's fitness to practice law in Iowa. *Templeton,* 784 N.W.2d at 767.  There we said,

> Each case must be decided on its own facts.  There must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Id.* (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991) (en banc)).

Stansberry engaged in a pattern of improper conduct by repeatedly going through his colleagues' gym bags, culminating in the criminal act of entering Doe's home under false pretenses and stealing her underpants. Stansberry acted intentionally, and he knowingly violated the privacy of Doe and Roe.  He tried to coerce Doe not to report him and denied he has a compulsion.  He described his reasoning behind photographing his colleagues' undergarments as, "It was dangerous and I suppose it was an adrenaline rush."

As we said in *Templeton,* where we sanctioned an attorney for window peeping,

> This conduct . . . raises serious misgivings about whether Templeton understands the concept of privacy and respects the law protecting individuals' privacy rights.  For these reasons, we find Templeton's criminal acts of invading Doe's,

Roe's, and Poe's privacy reflects adversely on his fitness to practice law in violation of rule 32:8.4(b).

*Id.* at 768.

The same concerns exist here. Moreover, the victims of Stansberry's actions feel sexually violated. We find these criminal actions reflect adversely on his fitness as a lawyer.

Additionally, Stansberry's criminal acts and subsequent denials to law enforcement demonstrate a lack of respect for the law and law enforcement. Stansberry made misleading statements to the Marshalltown police after he voluntarily agreed to speak with them. His untruthfulness showed a lack of respect for law enforcement. Similarly, Stansberry showed a lack of respect for the law and law enforcement by arguing with a courthouse security officer about his no-contact order when an officer prevented him from entering the courtroom because Doe was inside.

Further, the victims in this case suffered mental and emotional damages. Doe quit her job at the county attorney's office, sold her home, and moved out of the county. She sought treatment from a therapist who prescribed medication. Roe also sought therapy and began taking medication. In addition, other members of the Marshall County Attorney's Office felt victimized and unsafe in their workspace due to Stansberry's conduct.

Therefore, we agree with the commission that Stansberry violated rule 32:8.4(b).

**B. Whether Stansberry Violated Rule 32:8.4(c).** Rule 32:8.4(c) states, "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Iowa R. Prof'l Conduct 32:8.4(c). The Board must prove some level of scienter that is

greater than mere negligence to find a violation of rule 32:8.4(c). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). In *Netti*, we held an attorney did not violate rule 32:8.4(c) when there was no conclusive evidence that the attorney made "a knowing misrepresentation of a material fact." *Id.*

Here, in his interview with the Marshalltown police, Stansberry denied all culpability. He denied taking anything from Doe's home. He also denied taking photographs and deleting photographs from his mobile phone. These statements were false, and he knew them to be false. Stansberry, as an attorney who has been prosecuting defendants for over half a decade, was well aware he could have declined to answer questions instead of making false statements.

Moreover, his subsequent explanations of these denials were disingenuous. He stated that he told the officer he did not delete photographs because he was aware they were recoverable by law enforcement. He also said he lied about taking the underpants from Doe's home because he could not be sure if he had taken them from her home since he did not know where he accidentally dropped them.

Stansberry knowingly misrepresented material facts when he denied stealing Doe's underpants, denied taking photographs, and denied deleting photographs from his phone. Based on these denials, we agree with the commission that Stansberry violated rule 32:8.4(c).

**C. Whether Stansberry Violated Rule 32:8.4(g).** Rule 32:8.4(g) provides, "It is professional misconduct for a lawyer to engage . . . in sexual harassment or other unlawful discrimination in the practice of law[.]" Iowa R. Prof'l Conduct 32:8.4(g). The definition of sexual harassment is broad and encompasses "any physical or verbal act of a sexual nature that has no legitimate place in a legal setting." *Iowa Supreme Ct. Att'y Disciplinary*

*Bd. v. Moothart*, 860 N.W.2d 598, 604 (Iowa 2015). A lawyer may violate this rule by "sexually harass[ing] witnesses, court personnel, law partners, law-office employees, or other third parties." *Id.* at 603. In *Moothart*, we held an attorney violated rule 32:8.4(g), when the attorney made inappropriate sexual comments and advances towards multiple clients. *Id.* at 607–14.

Here, Stansberry targeted women under his supervision. Stansberry snuck into the offices of Doe and Roe, rifled through their personal bags, and took photographs of their undergarments for his own sexual gratification. Stansberry's conduct took place at the victims' and Stansberry's place of work in the county attorney's office.

Stansberry used his position and his job to find his victims—both of whom were staff members at the county attorney's office. Stansberry testified the reason he knew Doe was because they worked together at the district attorney's office, which is why she trusted Stansberry to go into her home alone and use her restroom.

Like the victims in *Moothart*, the victims here trusted Stansberry because of their relationship with him as an attorney and supervisor. *See Moothart*, 860 N.W.2d at 617. Stansberry took advantage of their trust by taking photographs of their intimate items and stealing underpants for his own sexual gratification. Moreover, after Doe caught him stealing her underpants, Stansberry performed internet searches on topics such as "how to cope with a sex scandal," "signs that you will lose your sexual harassment case," "know your rights when it comes to an office romance," "how to handle a sex scandal," and "hostile environmental sexual harassment." Thus, it appears that in his own mind, Stansberry believed he engaged in sexual harassment. Based on these facts, we agree with the commission that Stansberry violated rule 32:8.4(g).

**D. Whether Stansberry Violated Rule 32:8.4(d).** Rule 32:8.4(d) provides, "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" Iowa R. Prof'l Conduct 32:8.4(d).

Acts are prejudicial to the administration of justice when they "have hampered 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 123 (Iowa 1999)). This rule prohibits acts that prejudice the administration of justice "by violating the well-understood norms and conventions of the practice of law." *Templeton*, 784 N.W.2d at 768.

We have found violations of this rule when an attorney's actions have led to unnecessary proceedings and when the state spent law enforcement and prosecutorial resources on needless investigation of charges. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 673 (Iowa 2013). We have consistently held that an attorney violates rule 32:8.4(d) when his misconduct results in additional court proceedings or causes delayed or dismissed court proceedings. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013).

This case is different from past cases where direct conduct has resulted in a waste of prosecutorial resources or delayed and dismissed charges. For example, in *Iowa Supreme Court Attorney Disciplinary Board v. Dolezal*, the attorney violated rule 32:8.4(d) because he refused to turn over files when ordered to do so, which resulted in multiple unnecessary hearings. *See Dolezal*, 841 N.W.2d 114, 124 (Iowa 2013). Or, in *Rhinehart*, in which an attorney violated rule 32:8.4(d) because he committed fraud

in his divorce case by failing to disclose two contingent-fee cases, resulting in additional court proceedings. *See Rhinehart*, 827 N.W.2d at 180–81.

Here, Stansberry's actions led to his resignation at the county attorney's office. His resignation, not his criminal and ethical misconduct, was the direct cause of the continuances and dismissals of cases. At the time of his resignation, Stansberry was counsel of record in 145 cases. County Attorney Jennifer Miller testified that Stansberry's mishandling of some of his cases led to many extra hours of work for the county attorney's office. In addition, defendants were given generous plea offers because of approaching deadlines, approximately ten cases had to be dismissed for failure to meet deadlines, and it took approximately six months for the office to catch up on the workload after Stansberry's abrupt departure. However, the Board did not charge Stansberry with any ethical violations regarding work-place negligence that led to the problems Miller testified to at the hearing.

Whenever an attorney leaves employment, other attorneys and staff members must make sure the attorney's work is completed. Although Stansberry's charged ethical misconduct may have been a foreseeable cause of the delay in cases and extra work for the office, it was not the direct cause of the delay in cases and extra work for the office. If we were to hold otherwise, every time we suspend an attorney's license to practice law and his or her cases have to be continued, the attorney would be engaging in conduct that is prejudicial to the administration of justice.

We find a violation of this rule can only happen when the attorney's misconduct is a direct cause of the delay. Thus, we disagree with the commission's finding that Stansberry violated rule 32:8.4(d).

**IV. Sanction.**

In determining the proper sanction, we try to achieve consistency with prior cases involving similar misconduct. *Templeton*, 784 N.W.2d at 769. "[W]e consider 'the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 408 (Iowa 2007) (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 810 (Iowa 2006)). We also consider any aggravating or mitigating circumstances. *Id.*

In one other case, we have sanctioned an attorney for entering a residence in search of women's underpants to gratify himself sexually. *See Comm. on Prof'l Ethics & Conduct v. Tompkins*, 415 N.W.2d 620, 621 (Iowa 1987). The attorney in that case, Tompkins, admitted to entering over 100 homes to steal women's underpants. *Id.* Similar to the case before us, during the time Tompkins engaged in this criminal behavior, he was an assistant county attorney or county attorney. *Id.* In that case, we suspended Tompkins's license to practice law indefinitely with no possibility of reinstatement for two years. *Id.* at 624. We further held in order for reinstatement, Tompkins was required to provide satisfactory evidence that he

> (1) has not engaged in any similar acts of misconduct since the date of the hearing before the commission, (2) has received all outpatient treatment contemplated by his psychiatrist and psychologist, and (3) is continuing his commitment to lifetime psychiatric care. If Tompkins does apply for reinstatement, the court may appoint an independent psychologist or psychiatrist to evaluate Tompkins'[s] condition.

*Id.*

Another analogous case to the one before us is *Templeton*. In that case, we sanctioned an attorney for window peeping. *Templeton*, 784 N.W.2d at 764–66. There, we suspended Templeton's license for three months. *Id.* at 771. As we did with Tompkins, we also required Templeton to provide the court with an evaluation by a mental health professional verifying his fitness to practice law before reinstatement. *Id.*

Similar to Templeton and Tompkins, Stansberry committed multiple crimes that victimized women for his own sexual gratification. *See Templeton*, 784 N.W.2d at 764–65; *Tompkins*, 415 N.W.2d at 621. Unlike Templeton and Tompkins, however, Stansberry has done nothing up to this point to demonstrate his understanding that his behavior was wrong or taken actions to address his compulsion. *See Templeton*, 784 N.W.2d at 770–71; *Tompkins*, 415 N.W.2d at 622.

In *Tompkins*, the attorney acknowledged his mental disorder and sought treatment to help him control it. *Tompkins*, 415 N.W.2d at 622. He underwent inpatient and outpatient treatment and psychological testing to find a diagnosis for his disorder, and he had two medical professionals testify at his disciplinary hearing as to his condition. *Id.* at 622–23. Similarly, Templeton admitted to his "long history of compulsive and deviant sexual behavior." *Templeton*, 784 N.W.2d at 770. Templeton was diagnosed and receiving treatment for his mental health conditions prior to his grievance commission hearing. *Id.* at 770–71.

In contrast, Stansberry has denied any sort of compulsive behavior. He has sought no mental health treatment and testified only that he has inquired into whether treatment is necessary, but a mental health professional informed him he does not need it. Moreover, unlike both Tompkins and Templeton, when caught, Stansberry was not forthcoming to law enforcement and misled the investigation by deleting evidence from

his mobile phone and lying to a police officer. Tompkins, on the other hand, appears to have been very cooperative with law enforcement, admitting that he had engaged in his offensive conduct around 100 times prior to the time someone caught him. *Tompkins*, 415 N.W.2d at 621. Templeton, too, admitted to his obsession once caught. *Templeton*, 784 N.W.2d at 770.

The difference between the sanctions in *Tompkins* and *Templeton* is stark. Templeton lost his license to practice for only three months, while Tompkins lost his license to practice for two years. *See Templeton*, 784 N.W.2d at 771; *Tompkins*, 415 N.W.2d at 624. To decide on an appropriate sanction, we need to examine the facts together with the aggravating and mitigating circumstances.

Unlike Templeton, Stansberry was actively engaged in the practice of law when he committed his crimes. *See Templeton*, 784 N.W.2d at 764. While Templeton was in the business of delivering newspapers when he committed his peeping crimes, *see id.*, Stansberry was an assistant county attorney, victimizing the women whom he oversaw at work. Furthermore, unlike Templeton, Stansberry engaged in reprehensible conduct in addition to his criminal convictions, including sexual harassment and misrepresentations to law enforcement.

While Templeton victimized women whom he did not know by looking into their homes, *see id.* 764–65, Stansberry actually entered the spaces of women who trusted him and took or photographed their private undergarments. Moreover, because Stansberry was not honest with law enforcement throughout the investigation, we cannot be sure the state's charges were the only instances when this behavior occurred.

As we did in *Tompkins*, we find Stansberry's position as an assistant county attorney at the time of his acts an aggravating factor. *See*

*Tompkins*, 415 N.W.2d at 623–24. Stansberry knowingly violated the law and showed a lack of respect for law enforcement while acting in a position that enforces the criminal laws of the state and, as the first assistant county attorney, supervising other assistant county attorneys and staff in the office. *See also* Iowa R. of Prof'l Conduct 32:8.4 cmt. [5] ("Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of a lawyer.").

Failure to appreciate wrongfulness of one's actions is also an aggravating circumstance. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 655 (Iowa 2002). Stansberry has minimized his crimes, placed blame elsewhere, and failed to acknowledge his wrongdoing. In his brief to the commission, he acknowledged his actions, but denied they were in violation of the Iowa Rules of Professional Conduct. While Stansberry did report his criminal violations to the Board, he initially failed to report the conduct that resulted in his charges. He also failed to acknowledge his actions had serious consequences on the victims, and he failed to seek help from a mental health professional.

In determining the proper sanction, we also consider the harm caused by the attorney's misconduct as an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 528 (Iowa 2017). Stansberry victimized his female colleagues. He dug through their gym bags and pulled out their undergarments so he could photograph them. He stole a pair of underpants from a colleague's bedroom. Stansberry admitted to engaging in this conduct for sexual gratification. No person should feel unsafe at his or her home or place of work due to the sexual misdeeds of a colleague. Stansberry's actions traumatized the victims. His actions required those female attorneys to seek counseling.

Worst of all, one of the attorneys was so traumatized that she quit her job, moved to another county, and started her career anew.

We can find no mitigating factors.

Based on these findings, we find the sanction should be more than in *Templeton* because of the misrepresentations to the police and Stansberry's sexual harassment of the female employees he supervised. At the time of his actions, he was in a supervisory position over the colleagues he harassed. He also misrepresented his actions to the police during an active investigation while holding the office of assistant county attorney. As an assistant county attorney, he had the duty to "[d]iligently enforce or cause to be enforced in the county, state laws and county ordinances." Iowa Code § 331.756(1) (2016). If we allow a less than or equal sanction to the sanction in *Templeton*, we do an injustice for the citizens of this state and for the legal profession as a whole.

On the other hand, we find the sanction should be less than that in *Tompkins* because Tompkins entered the homes of over 100 females over an extensive period. *See Tompkins*, 415 N.W.2d at 621. Accordingly, we find the proper sanction should be suspension of Stansberry's license to practice law indefinitely with no possibility of reinstatement for one year from the date of filing this opinion. We also find that before reinstatement, Stansberry must provide an evaluation from a licensed healthcare professional verifying his fitness to practice law.

## V. Disposition.

We suspend Stansberry's license to practice law in Iowa for an indefinite period with no possibility of reinstatement for one year from the date of filing of this opinion. The suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Stansberry must comply with the notification requirements of Iowa Court Rule 34.24. To establish his

eligibility for reinstatement, Stansberry must file an application for reinstatement meeting all applicable requirements of Iowa Court Rule 34.25 and provide an evaluation from a licensed healthcare professional verifying his fitness to practice law. We tax the costs of this action to Stansberry in accordance with Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**