# IN THE SUPREME COURT OF IOWA

No. 19–0661

Filed September 6, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

      Complainant,

vs.

**MATTHEW L. NOEL,**

      Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

The grievance commission recommends a thirty-day suspension of an attorney's license to practice law for violations of ethics rules. **ATTORNEY REPRIMANDED.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Max E. Kirk, Waterloo, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Matthew L. Noel alleging multiple violations of the Iowa Rules of Professional Conduct. A division of the Iowa Supreme Court Grievance Commission found the Board proved some of the alleged violations and recommended a thirty-day suspension. We agree that the Board proved some of the alleged violations, but we publically reprimand Noel under the circumstances of this case.

## I. Scope and Standard of Review.

We review attorney disciplinary matters de novo. Iowa Ct. R. 36.21(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kowalke*, 918 N.W.2d 158, 161 (Iowa 2018). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 144 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 138 (Iowa 2016)). We give the commission's findings, conclusions, and recommendations respectful consideration, "especially with respect to witness credibility," but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 492 (Iowa 2014) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 131 (Iowa 2004)); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stansberry*, 922 N.W.2d 591, 593 (Iowa 2019). We may impose a sanction that is greater or lesser than that recommended by the commission. Iowa Ct. R. 36.21(1); *Stansberry*, 922 N.W.2d at 594.

## II. Findings of Fact and Prior Proceedings.

"Facts admitted in an answer are 'deemed established.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 522 (Iowa

2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013)). We admitted Noel to the practice of law in Iowa in 2008. He practices primarily in civil and criminal litigation. In December 2015, Noel practiced law in the office of Mayer, Lonergan & Rolfes. On April 20, 2017, Noel began to practice law as The Noel Law Firm and ended his partnership with Mayer, Lonergan & Rolfes.

**A. Prior Disciplinary Proceeding.** On October 30, 2017, the Board filed an ethics complaint against Noel for conduct predating and unrelated to his conduct that gave rise to the present disciplinary proceeding. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel* (*Noel I*), 923 N.W.2d 575, 581 (Iowa 2019). Between November 2008 and January 1, 2014, Noel had a contract with the state public defender to provide legal services to indigent adults and juveniles. *Id.* at 579. During that time, Noel sought fees for services he did not perform, made false mileage claims, and failed to remedy billing submissions that he subsequently realized were incorrect. *Id.* at 585–86, 587, 588.

The Board filed an amended complaint in *Noel I* on March 5, 2018. *Id.* at 581. The *Noel I* commission held a hearing on that amended complaint on March 27 and 28, and issued its report and sanctions recommendation on July 18. *Id.* In February 2019, we suspended Noel's license for at least one year as a result of his unethical billing practices between 2008 and January 1, 2014. *Id.* at 591.

**B. Fact-Finding Regarding Present Disciplinary Proceeding— Janelle Huffman Matter.** In December 2015, Janelle Huffman spoke with Noel about filing a lawsuit against a roofing company, JT Home Improvement, for water damage caused by the roofing company. Noel agreed to represent Huffman in a lawsuit against JT Home Improvement upon payment of a retainer. Noel and Huffman also orally agreed that Noel

would charge her $175 per hour. Huffman's insurance carrier hired Restoration and Cleaning of the Quad Cities, L.L.C., doing business as Rainbow International Restoration & Cleaning (Rainbow), to repair the water damage and restore the interior of her residence.

In January 2016, Huffman met with Noel to discuss filing a lawsuit against Rainbow for failing to properly repair and restore the interior of her residence. Noel agreed to represent Huffman in a lawsuit against Rainbow upon payment of a retainer. That month, Huffman paid Noel's firm $920.

On January 26, Noel billed Huffman $350 to "Draft and Prepare Petition and Original Notice." The petition named JT Home Improvement and Rainbow as defendants, but Noel never filed this petition.

Between January and June 2016, Huffman repeatedly contacted Noel's law office to ask about the status of her suit against JT Home Improvement and Rainbow and for advice on how to handle her housing situation and interactions with Rainbow. She received no substantive response from Noel.

On June 17, Rainbow sued Huffman for $6800, which it alleged Huffman owed for Rainbow's water damage remediation and reconstruction services beginning in August 2015. Huffman emailed Noel on June 25 to report that Rainbow had served her with papers and that she would deliver them to his office.

In a letter dated July 17, Noel informed Huffman that he was working on an answer and counterclaim to Rainbow's suit, the answer was due on July 15, and he would have it filed by then. Noel filed an answer and breach-of-contract counterclaim against Rainbow on July 29.

On August 29, counsel for Rainbow and Huffman filed the Iowa Rule of Civil Procedure 1.281 Trial Scheduling and Discovery Plan for Expedited

Civil Action. The plan provided that the parties would provide initial disclosures no later than September 30, 2016, and a complete set of joint jury instructions and verdict forms, including a statement of the case, at least fourteen days before trial. It also stated late settlement fees under Iowa Rule of Civil Procedure 1.909 were applicable. Noel never provided Huffman's initial disclosures to Rainbow. He admitted he did not file the jury instructions and "that is certainly something [he] dropped the ball on, there's no doubt about it."

On October 7, Rainbow served interrogatories and requests for production of documents on Noel as Huffman's counsel. Noel's office passed along the interrogatories to Huffman on October 10, asking her to answer and return them to the office "at her earliest convenience." Noel did not inform Huffman of the necessity of returning the interrogatories in a timely manner.

Noel did not timely produce the discovery requests. He eventually conveyed unsigned interrogatory answers on February 1, 2017, and responded to Rainbow's request for documents on May 8, 2017. However, he did so only after Rainbow sent him a notice of overdue discovery requests, and the court granted Rainbow's motions for orders compelling discovery and awarding sanctions.

Noel did not resist either the motion to compel or the motion for sanctions. Although it is disputed whether Noel informed Huffman of the motion to compel, he did not inform Huffman of the motion for sanctions. The sanctions order imposed a $345 attorney fee sanction that Noel eventually paid, even though he claimed Huffman was the cause of the delay.

On February 3, the court granted Noel's motion to continue the trial. It scheduled a settlement conference for April 21 and trial for May 22. On

April 20, court administration informed Rainbow's counsel and Noel that Judge Mark Cleve would preside at the settlement conference. However, on April 21, the court cancelled the settlement conference because Noel did not want to proceed with the settlement conference due to Judge Cleve's prior affiliation with Rainbow's counsel's law firm, some years back. The court never rescheduled the settlement conference.

Noel did not consult with Huffman about whether to proceed with the settlement conference scheduled with Judge Cleve. Huffman did not instruct Noel to cancel the settlement conference. Efforts to reach Huffman to discuss the circumstances with Judge Cleve were unsuccessful, so Huffman met Noel at the courthouse for the cancelled conference on April 21. Noel then was able to inform Huffman that the case was not settled and would be tried to a jury beginning on May 22. Throughout this time, Huffman continued to inquire about the status of her case against JT Home Improvement.

The week before the trial date, Noel and Huffman met for a trial preparation meeting. On Friday, May 19, Huffman emailed Noel's legal assistant, saying she hoped "Noel can maybe make a settlement." Noel's legal assistant conveyed this desire to Noel and to Rainbow, but Rainbow refused to settle unless Huffman paid something. Noel's office informed Huffman of Rainbow's refusal. It also said that a settlement would be unlikely and that trial on Monday was "probably the best bet."

The morning of trial, counsel met with the presiding judge, Judge Joel Barrows, in chambers to discuss Rainbow's unresisted motion in limine and Noel's failure to file jury instructions. Because Noel did not file jury instructions and neither party moved to continue, Judge Barrows said that he needed some time to think about the appropriate next steps and suggested the attorneys "see what we can go do with this case."

The attorneys then negotiated a $4500 settlement with their respective clients and reported the settlement to Judge Barrows. The court assessed a late settlement fee of $1000 against Huffman. Noel testified that he told Huffman the late settlement fee was part of the settlement package. Huffman denies this. We find Huffman more credible on this fact issue.

On June 6, Huffman filed the first of two "To Whom It May Concern" letters with the court. In the June 6 letter, Huffman alleged that Noel "told [her] the judge told him this isn't a Rainbow problem – it's a Roofer [(i.e., JT Home Improvement)] issue – get out of there – settle it – he was sending the Jury home." She also claimed that Noel led her to believe that she had to pay only $4500 but then she was sent a bill for an additional $1000.

On June 9, Noel sent Huffman a letter after he had received a copy of her June 6 letter. In his letter to Huffman, he explained that he thought she understood that she would pay the court costs. He also stated that he had not filed against JT Home Improvement yet because her June 6 letter "essentially turned [him] into a witness as to the [settlement] negotiations [and] it may be [his] ethical duty [to] withdraw from th[e] case [against JT Home Improvement]." He then stated, "If [Huffman] insist[ed] on holding a hearing with the Judge about the Court costs [he] will have to withdraw and will no longer [be] able to represent [her]." Huffman paid the $1000 late settlement fee on June 12.

On June 14, Huffman sent her second letter to the court. In that letter, she again inquired why the court assessed her the $1000 fee even though she already paid Rainbow and did not have her day in court. She claimed, "[T]his [(the $1000 fee)] *wasn't* a *late* settlement[;] this was a you pay!!!" She also claimed Noel told her he would not represent her against JT Home Improvement if she did not pay the $1000 bill.

The district court treated Huffman's June 6 and June 14 letters as motions for a hearing and scheduled one for July 27. At the hearing, which Judge Barrows presided over, Huffman declined to waive attorney–client privilege such that Noel could discuss the communications between himself and Huffman relevant to the allegations made in Huffman's letters. Judge Barrows also expressed his belief that he was obligated to refer the matter to the Board because of Noel's purported misrepresentation of Judge Barrows's statements, handling of discovery, and failure to comply with the terms of the trial scheduling and discovery plan. Judge Barrows thereafter set Huffman's letter-motions for a status conference on August 24 and recused himself. He filed his complaint with the Board shortly after the July 27, 2017 hearing.

Noel subsequently filed a motion to withdraw. After the August 24 status conference, the court found that the settlement record revealed Noel "agreed to be personally liable for the late settlement fee" and that the court should return the $1000 Huffman paid. The court also granted Noel's motion to withdraw. Noel eventually paid the $1000 fee on April 5, 2018.

Sometime after the July and August 2017 hearings, Huffman filed her complaint with the Board.

**C. Present Disciplinary Proceedings.** On July 31, 2018, the Board filed the present complaint alleging Noel's conduct in the Huffman matter violated Iowa Rules of Professional Conduct 32:1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued."), 32:1.3 ("[A] lawyer shall act with reasonable diligence and promptness in representing a client."), 32:1.4(a)(1) ("[A] lawyer shall . . . promptly inform the client of any

decisions or circumstances with respect to which the client's informed consent . . . is required . . . ."), 32:1.4(a)(2) ("[A] lawyer shall . . . reasonably consult with the client about the means by which the client's objectives are to be accomplished[.]"), 32:1.4(a)(3) ("[A] lawyer shall . . . keep the client reasonably informed about the status of the matter[.]"), 32:1.4(a)(4) ("[A] lawyer shall . . . promptly comply with reasonable requests for information[.]"), 32:1.4(b) ("[A] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."), 32:3.4(d) ("[A] lawyer shall not . . . in pretrial procedure . . . fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party[.]"), 32:8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]"), and 32:8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]").

Noel filed his answer on August 27, and the commission scheduled a hearing for December 12–13. In his answer, Noel directly responded to the Board's factual allegations, and at the hearing on December 12, he clarified that he was also denying the rule violations allegations.

On December 4, the Board amended its complaint to add additional facts. Noel did not file an answer to the amended complaint, but at the outset of the first day of the hearing, he denied the new allegations.

The commission submitted the case on December 13. In February 2019, while the commission was awaiting the parties' submission of posthearing filings, we issued our *Noel I* opinion, suspending Noel's license for at least one year as a result of his unethical billing practices between 2008 and January 1, 2014. *See Noel I*, 923 N.W.2d at 579–80, 591.

On April 19, 2019, the commission issued its report and recommendation in the present case. It found Noel violated rules 32:1.2(a) in two respects, 32:1.3, and 32:1.4(a)(2)–(4) and (b). It found the Board failed to establish Noel violated rules 32:3.4(d) and 32:8.4(c) and (d). The Board did not pursue its allegation that Noel violated rule 32:1.4(a)(1) in its posthearing brief, and the commission did not address that allegation in its report and recommendation. Neither will we.

The commission recommended a thirty-day suspension of Noel's license to practice law for the present violations. In determining its sanctions recommendation, it did not take into account our February 2019 opinion disciplining Noel.

Noel did not appeal, and the Board did not apply for permission to appeal the commission's ruling. *See* Iowa Ct. R. 36.22(1)–(2). We set the date for submission of the commission's report, and both parties filed written statements regarding the recommended discipline. *See id.* r. 36.21(1). Of particular import, the Board contends we should treat Noel's February 2019 discipline as prior discipline, which is an aggravating factor. Noel contends to the contrary.

### III. Violations.

**A. Whether Noel Violated Rule 32:1.2(a)—Scope of Representation and Allocation of Authority Between Client and Lawyer.** Rule 32:1.2(a) provides in pertinent part,

> Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by rule 32:1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

Iowa R. Prof'l Conduct 32:1.2(a).

We find the Board proved by a convincing preponderance of the evidence that Noel failed to abide by Huffman's objective in suing JT Home Improvement and Rainbow and his agreement to file a lawsuit against JT Home Improvement and Rainbow. *See Kieffer-Garrison*, 847 N.W.2d at 494 (finding attorney failed to abide by her client's decisions concerning the objectives of the representation when she agreed to prepare and file an application for further review but did not do so). The record reveals communications from Huffman to Noel, beginning in January 2016, indicating her desire to proceed with a lawsuit against JT Home Improvement and Rainbow. However, Noel never filed the lawsuit.

The commission also found that Noel violated this rule by failing to sufficiently consult with Huffman "as to the means by which [her objectives were] to be pursued." Iowa R. Prof'l Conduct 32:1.2(a). We disagree.

Comment [1] to rule 32:1.2 provides in relevant part, "With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client as required by rule 32:1.4(a)(2)." *Id.* r. 32:1.2 cmt. [1]. Rule 32:1.4(a)(2) imposes a duty on the lawyer to "reasonably consult with the client about the means by which the client's objectives are to be accomplished." The commission concluded Noel did not do this because he failed to ensure Huffman understood what he expected of her, specifically, by communicating expectations in a written letter after it became clear that Huffman often misunderstood oral communications.

However, the record reveals otherwise. Either directly or through his office assistants, he did reasonably consult with Huffman about the means for accomplishing her objectives. Noel and the office assistants would communicate with Huffman by email and left voicemails for her— two methods of communication that can reduce misunderstandings. The

office assistants routinely made follow-up phone calls to Huffman to see where she was on getting Noel certain documents. One assistant, Janna Linville, testified that even when Huffman would email the office, she found Huffman responded better to oral communication "so [Huffman] could ask her question right then." Both office assistants also testified that Huffman would stop into the office weekly so there were times when Huffman would email the office and then stop in before anyone had a chance to respond by email.

The record further reveals that someone in the office did communicate to Huffman what Noel expected of her. Linville testified that if she communicated orally with Huffman, she would have Huffman repeat back the information, that she "had to think outside the box how to explain things to [Huffman]," and that Huffman acted as if she understood what the office conveyed to her at the time.

The commission concluded Noel failed to consult with Huffman regarding the means by which her objectives were to be pursued because Noel's communications with Huffman were often oral and he admitted at the hearing that he "should have kept [Huffman] more updated." Specifically, the commission questioned why Noel did not write letters to communicate with Huffman, a client who was difficult to communicate with.

It is undoubtedly true that Noel could have communicated with Huffman more often and through additional letters or emails as the commission concluded. However, there is some evidence in the record suggesting that even if Noel had communicated more often or through writing, Huffman still would have struggled to understand. For example, after Huffman filed her June 6, 2017 letter to the court, Noel sent Huffman a letter dated June 9, 2017, explaining that her June 6 letter to the court

"essentially turned [him] into a witness as to the [settlement] negotiations [and i]f [she] insist[ed] on holding a hearing with the Judge about the Court costs [he] will have to withdraw and will no longer [be] able to represent [her against JT Home Improvement]." On June 12, in an email response to Huffman, one of Noel's legal assistants again explained the conflict of interest that Huffman's June 6 letter possibly created and the potential consequences. Nevertheless, in her June 14 letter to the court, Huffman claimed Noel refused to represent her against JT Home Improvement unless she paid the late settlement fee. Huffman's June 14 letter to the court suggests she struggled to understand why Noel would not represent her against JT Home Improvement even though she was twice given an explanation in writing.

Similarly, after Huffman wrote the $1000 check and a hearing on her letters to the court was set, Noel emailed Huffman a copy of the court order for the hearing and a letter dated June 21, 2017. The email explained why the $1000 fee was still outstanding—because he was holding Huffman's check in trust and he had not cashed it. Nonetheless, Huffman replied to the email, claiming Noel cashed the check.

Upon our review, we conclude that the record does not show that Noel failed to reasonably consult with Huffman about the means for accomplishing her objectives. Noel's office repeatedly informed and reminded Huffman of what Noel expected of her. There was testimony that the office assistants tried to communicate with Huffman in ways that she seemed most responsive to. Noel and both office assistants testified Huffman would often act as if she understood after they consulted her on what Noel needed.

Although not best practices, Noel's consultations with Huffman about the means for accomplishing her objectives cannot be said to be

unreasonable. Moreover, the fact that a client did not comply as instructed or requested and would forget or not actually understand does not, alone, establish that the attorney's consultation was unreasonable.

We find Noel violated rule 32:1.2(a) when he failed to file a lawsuit against JT Home Improvement and, thereby, failed to abide by Huffman's decisions regarding the objectives of the representation. Noel did not violate rule 32:1.2(a) by failing to reasonably consult with Huffman about the means for accomplishing her objectives.

**B. Whether Noel Violated Rule 32:1.3—Diligence.** Rule 32:1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Thus, the lawyer has a duty to handle client matters in a "reasonably timely manner." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 598 (Iowa 2011) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 678 (Iowa 2010)). An attorney violates this rule when the attorney "fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters." *Nelson*, 838 N.W.2d at 537.

Ordinarily, a violation of rule 32:1.3 does not "occur from one missed deadline." *West*, 901 N.W.2d at 524 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012)). Rather, a violation occurs from the "consistent failure to perform those obligations that a lawyer has assumed[ ] or a conscious disregard for the responsibilities a lawyer owes to a client." *Id.* (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010)). Often, this involves the "lawyer doing little or nothing to advance the interests of [the] client after agreeing to represent the client." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 552 (Iowa 2004).

Noel failed to handle Huffman's matters in a reasonably timely manner. Although he drafted a petition and original notice against JT Home Improvement and Rainbow in January 2016 and he represented Huffman through August 2017, he never filed that lawsuit. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 223–24 (Iowa 2018) (holding attorney violated rule 32:1.3 by never filing a completed petition); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 208–09 (Iowa 2016) (finding attorney violated rule 32:1.3 when he delayed filing a petition for four months); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 668–69 (Iowa 2007) (holding attorney violated rule 32:1.3 when he failed to file an appellate brief on behalf of his client or move to withdraw).

Noel failed to make the initial disclosures required in the trial scheduling and discovery plan. He failed to file a set of jury instructions as required by the trial scheduling and discovery plan. He was also late in producing answers to interrogatories and responses to requests for production and produced those discovery items only after the opposing side filed a motion to compel and a motion for sanctions.

Noel's consistent failures to timely meet his obligations as Huffman's attorney violated rule 32:1.3.

**C. Whether Noel Violated Rule 32:1.4(a)(2), (a)(3), (a)(4), and (b)—Communication.** The Board alleged and the commission found Noel violated rule 32:1.4(a)(2), (a)(3), (a)(4), and (b). We find Noel violated rule 32:1.4(a)(3), (a)(4), and (b).

Rule 32:1.4(a)(2) provides that an attorney shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished." As discussed above, although Noel failed to ensure Huffman actually understood what he communicated to her and what he

expected of her, he did not fail to reasonably consult with her on the means for accomplishing her objectives. We find the Board failed to establish Noel violated rule 32:1.4(a)(2).

Rule 32:1.4(a)(3) requires an attorney to "keep the client reasonably informed about the status of the matter," and rule 32:1.4(a)(4) requires the attorney to "promptly comply with reasonable requests for information." Noel failed to keep Huffman reasonably informed about the status of the suit she wished to file against JT Home Improvement and Rainbow and to promptly comply with reasonable requests for information.

Huffman testified and the record reveals that she emailed Noel several times between January and June 2016 for an update on the status of that lawsuit. During that same period, she also emailed Noel several times, asking for advice or suggestions on how to handle matters with Rainbow and her housing situation. The commission found credible Huffman's testimony that she did not receive any responses from Noel. Indeed, the record reveals the first recorded substantive response Huffman received from Noel was a letter dated July 17, 2016, in which Noel indicated Rainbow had filed suit against Huffman first, he was working on an answer that was due on July 15, and he would have the answer filed by then.

Noel's failure to keep Huffman reasonably informed caused her to repeatedly inquire and request information about her case's status. *See* Iowa R. Prof'l Conduct 32:1.4 cmt. [4] ("A lawyer's regular communications with clients will minimize the occasions on which a client will need to request information concerning the representation."). But the evidence in the record demonstrates Noel did not respond promptly, if at all, to Huffman's inquiries and requests, and Noel produced no evidence that persuasively rebuts that conclusion. Noel even admitted, "I do think I

should have kept her more updated." Thus Noel violated rule 32:1.4(a)(3) and (a)(4). *See Barry*, 908 N.W.2d at 224–25 (finding attorney violated rule 32:1.4(a)(3) and (a)(4) when he failed to reasonably inform the clients about the status of the case, causing the clients to repeatedly ask or stop in for updates); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelissen*, 871 N.W.2d 694, 698–99 (Iowa 2015) (finding the Board failed to establish a violation of rule 32:1.4(a)(3) and (a)(4) when the record showed the attorney normally, although not always, responded to the client's emails within one or two days).

Rule 32:1.4(b) provides, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Iowa R. Prof'l Conduct 32:1.4(b). Noel failed to adequately communicate and explain matters to Huffman.

Comment [5] to rule 32:1.4 provides in relevant part,

> The client should have sufficient information to participate intelligently in . . . the means by which [the client's objectives] are to be pursued, to the extent the client is willing and able to do so. Adequacy of communication depends in part on the kind of advice and assistance that is involved.

*Id.* cmt. [5]. Several emails from Huffman to Noel and the testimonies of Huffman, Noel, and Noel's two office assistants show Huffman struggled to understand what was expected of her and indicate Noel failed to take steps to adequately explain matters such that Huffman could intelligently participate in the means for pursuing her objectives.

Further, Noel failed to inform Huffman of the necessity of returning her answers to Rainbow's interrogatories in a timely manner and the ramifications for not doing so. He also failed to inform Huffman when Rainbow filed a motion for sanctions, that he did not resist the motion for sanctions, or of the ramifications of the motion. Noel's failure to inform

Huffman of that sanctions matter ensured she did not have sufficient information to make informed decisions about the case or to participate in that aspect of her case. *Cf. Turner*, 918 N.W.2d at 146 (finding attorney violated rule 32:1.4(b) when he did not communicate with a client to the extent reasonably necessary for the client to be able to make an informed decision of whether to file a Chapter 7 or Chapter 11 bankruptcy case); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 665 (Iowa 2017) (finding attorney violated rule 32:1.4(b) when her "failure to fully explain the circumstances [of her threat to withdraw as counsel] left [the client] unable to make an informed decision regarding [the attorney's] representation and effectively prepare for and participate in the trial").

We find the Board proved by a convincing preponderance of the evidence that Noel violated rule 32:1.4(a)(3), (a)(4), and (b).

**D. Whether Noel Violated Rule 32:3.4(d)—Fairness to Opposing Party and Counsel.** Rule 32:3.4(d) provides a lawyer shall not "in pretrial procedure . . . fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Iowa R. Prof'l Conduct 32:3.4(d). Because this case involved only one motion to compel, one motion for sanctions, and difficulties in obtaining written documentation from the client in order to comply with the discovery requests, the commission concluded the Board failed to prove that Noel violated rule 32:3.4(d). We disagree.

In *Iowa Supreme Court Attorney Disciplinary Board v. Hedgecoth*, the attorney repeatedly failed to comply with opposing counsel's discovery requests and, eventually, court orders to produce discovery. 862 N.W.2d 354, 358–59 (Iowa 2015). The attorney's repeated failures occurred over a five-month period. *Id.* Opposing counsel filed one motion to compel and three motions for sanctions. *Id.* In that case, there were multiple motions,

in part because opposing counsel did not hesitate to file the motions. *See id.* (stating that opposing counsel filed the motion to compel two weeks after the first set of discovery requests was due, the first motion for sanctions one week after the court granted the motion to compel, the second motion for sanctions one day after the attorney and his client failed to appear for a deposition, and the third motion for sanctions two weeks after the court issued a second order compelling discovery).

Additionally, the court granted one of the sanctions motions because the court found the discovery responses the attorney eventually provided were deficient, untimely, unresponsive, and not in final form. *Id.* at 359. We noted that "[e]ach of the[] motions were filed because [the attorney] repeatedly failed to provide timely discovery responses to opposing counsel's proper requests" and found the attorney violated rule 32:3.4(d). *Id.* at 362–63.

In *Iowa Supreme Court Attorney Disciplinary Board v. Barnhill,* the attorney failed to "designate expert opinions until months after the deadline," "to produce some documents required as part of [the] initial disclosures," and to produce some documents properly requested by the opposing party even though opposing counsel filed two motions to compel, which the court granted. 885 N.W.2d 408, 415 (Iowa 2016). Roughly half-a-year after discovery opened, opposing counsel filed a motion for sanctions. *See id.* (noting discovery opened in August 2013 and the motion for sanctions was filed in spring 2014). We found the attorney's conduct violated rule 32:3.4(d). *Id.* at 423. We relied on *Hedgecoth* for the proposition that an attorney violates rule 32:3.4(d) when " 'the court granted several motions to compel and motions for sanctions filed by opposing counsel' because the attorney 'repeatedly failed to provide timely discovery responses to opposing counsel's proper requests.' " *Id.* (quoting

*Hedgecoth*, 862 N.W.2d at 362–63). We reasoned Barnhill's conduct was similar to the unethical conduct in *Hedgecoth*. *Id.*

In *Iowa Supreme Court Attorney Disciplinary Board v. Kennedy*, the attorney filed, on January 6, a notice of identification of an expert with a certification that he had served the notice on all parties. 837 N.W.2d 659, 665 (Iowa 2013). Opposing counsel did not receive the notice until June 8 but thereafter immediately notified the attorney that the notice was insufficient because it did not provide the expert's qualifications or the purpose for calling the expert. *Id.* On July 12, opposing counsel sent a letter to the attorney threatening to file a motion for summary judgment within a week because all of the discovery responses were overdue. *Id.* Opposing counsel filed for summary judgment on July 20, claiming the attorney's client failed to disclose his expert witness's qualifications and the purpose for calling the expert within the statutorily designated time. *Id.* Opposing counsel sent another letter in October indicating he still had not received the requested discovery documents or information about the expert. *Id.* He then filed a motion to compel two weeks later, which the court granted. *Id.* The attorney stipulated that she evaded opposing counsel's proper attempts to learn the expert's identity and opinions. *Id.* at 670. We found her "persistent noncompliance fell short of being 'reasonably diligent' and thus violated rule 32:3.4[(d)]" despite there being only one motion to compel. *Id.* (quoting Iowa R. Prof'l Conduct 32:3.4(d)).

Although the multiple motions to compel and for sanctions were a dispositive factor in *Hedgecoth* and *Barnhill*, *Kennedy* demonstrates that multiple motions are not a prerequisite to violating rule 32:3.4(d). Rather, such motions are merely evidence suggesting the attorney did not make a reasonable effort to comply with proper discovery requests. Opposing counsel's willingness to either file such motions, as in *Hedgecoth*, 862

N.W.2d at 358–59, or be forgiving and lenient, like Rainbow's counsel here or as in *Kennedy*, 837 N.W.2d at 665, should not be determinative of whether an attorney violates rule 32:3.4(d).

Further, Noel's conduct is similar to the situations in *Hedgecoth*, *Barnhill*, and *Kennedy*. As in *Barnhill*, Noel failed to make the required initial disclosures, *see* 885 N.W.2d at 415, and similar to *Hedgecoth*, when Noel finally provided Huffman's answers to interrogatories, they were unsigned, *cf.* 862 N.W.2d at 359 (noting discovery responses were not in final form). Like in *Hedgecoth* and *Kennedy*, Noel's handling of discovery resulted in multiple requests and inquiries from opposing counsel about discovery. *See Hedgecoth*, 862 N.W.2d at 358–59; *Kennedy*, 837 N.W.2d at 665. Often he did not respond to these inquiries from Rainbow's counsel for days or weeks. *See Kennedy*, 837 N.W.2d at 665 (noting after opposing counsel resent the discovery requests on May 17, the attorney's next response was on July 21 when she provided some of the requested discovery).

Moreover, Noel's behavior in early February and March 2017 indicates he had not made a reasonable effort to comply with Rainbow's request for production of documents. First, the court compelled Noel to produce all of the requested discovery by February 1. Noel provided Rainbow's counsel with Huffman's unsigned answers to interrogatories on February 1 but did not respond to the request for production of documents. He said nothing about the document request in his February 1 communication conveying the interrogatory answers. On February 7, he emailed Rainbow's counsel to explain that while he had all the information necessary to complete the document request, he had had the flu, so he would have the response to the request by the end of the week. However, a February 7 email from Noel's legal assistant to Huffman

and a February 9 letter from Noel to Huffman reveal that Noel was still trying to obtain the information from Huffman necessary to complete the response when he emailed Rainbow's counsel on February 7. In addition, in a letter dated March 28, Noel asked Rainbow's counsel if the deadline for the response could be moved back to April 7 because he was under a time crunch with another case involving multiple felony charges. Analogous to *Kennedy*, Noel's excuses for the continued failure to respond to Rainbow's documents request seem like an effort to evade Rainbow's attempts of ascertaining information relevant to the case. *See id.* at 670. This behavior does not constitute a reasonable effort to comply with requested discovery.

Finally, even after Noel claimed on February 7 to have all of the information needed to respond to Rainbow's document request, he still did not provide a response until May 8. He did not communicate with Rainbow's counsel about the delay until Rainbow's counsel sent him a letter on March 17, threatening to file for sanctions. Even then, Noel did not respond to that letter for a week and a half. Noel's continued delay caused Rainbow's counsel to file a motion for sanctions on April 3 and a motion in limine, specifically to exclude evidence that was not produced in discovery, on May 8. Assuming Noel did have all the necessary information to complete the documents request on February 7, failing to do so for another three months and failing to communicate with opposing counsel for almost two months is not a reasonable effort to comply with requested discovery.

We find the Board proved by a convincing preponderance of the evidence that Noel violated rule 32:3.4(d).

**E. Whether Noel Violated Rule 32:8.4(c)—Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation.** Rule 32:8.4(c)

provides that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). To establish a violation of rule 32:8.4(c), "[t]he Board must prove some level of scienter that is greater than mere negligence." *Stansberry*, 922 N.W.2d at 596. The salient question is "whether the effect of the lawyer's conduct is to mislead rather than to inform." *Barry*, 908 N.W.2d at 226 (quoting *Weiland*, 885 N.W.2d at 211–12). The commission found the Board failed to prove Noel violated rule 32:8.4(c) because it found Huffman's testimony on this claim lacked credibility. We agree with the commission's conclusion.

The Board alleged Noel violated rule 32:8.4(c) based on Huffman's claim about what Noel told her Judge Barrows said on the morning of trial. In her June 6 letter to the court, Huffman asserted that Noel said Judge Barrows "told him this isn't a Rainbow problem – it's a Roofer [(i.e., JT Home Improvement)] issue – get out of there – settle it – he was sending the Jury home." At the July 27 hearing on Huffman's letters, Judge Barrows denied making those statements. At the disciplinary hearing, Noel denied telling Huffman Judge Barrows made such statements.

As there is no other contemporaneous evidence of what Noel told Huffman with respect to Judge Barrows's statements, this fact issue turns on a credibility determination. The commission did not find credible Huffman's recollection of what Noel told her Judge Barrows said. The commission made this finding based on Huffman's other recollections of the morning of trial that were obviously inaccurate. Although we are not bound by the commission's findings, we agree with the commission on its credibility determinations here. *See Kieffer-Garrison*, 847 N.W.2d at 492.

Other than Huffman's recollection, there is nothing in the record demonstrating that Noel actually misrepresented Judge Barrows's

statements and that he did so with the intent to mislead. *See Netti*, 797 N.W.2d at 605; *cf. Stansberry*, 922 N.W.2d at 596; *Barry*, 908 N.W.2d at 226. Accordingly, we find the Board failed to prove Noel violated rule 32:3.4(c) by a convincing preponderance of the evidence.

**F. Whether Noel Violated Rule 32:8.4(d)—Conduct That Is Prejudicial to the Administration of Justice.** Rule 32:8.4(d) provides it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). This rule is intended to prohibit conduct "that has an undesirable *effect*—some interference with the operation of the court system." *Weiland*, 885 N.W.2d at 212. While "[t]here is no typical form of conduct that prejudices the administration of justice," *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 637 (Iowa 2015) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 587 (Iowa 2011)), conduct that violates this rule "must hamper 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely' by violating the well-understood norms and conventions of the practice of law," *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 191 (Iowa 2015) (quoting *Netti*, 797 N.W.2d at 605). "We have consistently held an attorney violates rule 32:8.4(d) when the 'misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed.' " *Vandel*, 889 N.W.2d at 666 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 124 (Iowa 2013)). The commission concluded the Board failed to prove that Noel violated rule 32:8.4(d). We disagree.

Noel's neglectful and untimely handling of discovery matters resulted in additional court proceedings and caused other court proceedings to be delayed. His conduct resulted in opposing counsel filing

a motion to compel and a motion for sanctions, which led to three additional court proceedings—one on each motion and one on the sanctions amount. His conduct also resulted in the extension of the deadline for filing motions for summary judgment and the trial being delayed from March 13, 2017, to May 22, 2017. *See Barnhill*, 885 N.W.2d at 422 (finding attorney violated rule 32:8.4(d) when, in one client matter, her failure to comply with discovery obligations resulted in additional court proceedings, "including a sanctions hearing and hearings on [the opposing party's] motions to compel," which required the court to leave the case open, even after it had granted summary judgment, so the sanctions issue could be resolved); *see also Turner,* 918 N.W.2d at 151 (finding attorney violated rule 32:8.4(d) when he, among other things, made improper filings in the bankruptcy court that delayed the proceedings).

We acknowledge the undesirable effect of Noel's conduct is not as egregious as in other cases. *See, e.g., Barry*, 908 N.W.2d at 226 (finding attorney's conduct delayed court proceedings by lengthening the dissolution process for months); *Vandel*, 889 N.W.2d at 666 (finding attorney's conduct that delayed proceedings was prejudicial to opposing party because resolution of the show cause application was delayed by two weeks); *Barnhill,* 885 N.W.2d at 422 (finding attorney violated the rule, in another client matter, when she repeatedly falsely asserted she had paid the client in full, which led to an additional lawsuit and bench trial that were ultimately unnecessary). Nevertheless, Noel's conduct interfered with the operation of the court system by causing three additional hearings, delaying the summary judgment filing deadline, and delaying the date of trial. We find by a convincing preponderance of the evidence that Noel violated rule 32:8.4(d).

## IV. Sanction.

We must now determine the appropriate sanction for Noel's present unethical conduct. The commission recommended a thirty-day suspension. The Board contends we should suspend Noel's license for an additional sixty days on top of the one-year suspension we imposed in *Noel I*. It also contends we should consider the discipline imposed in *Noel I* as prior discipline, an aggravating factor, because the suspension in *Noel I* is unrelated to Noel's representation of Huffman and Noel's misconduct in the Huffman matter occurred after the misconduct that gave rise to *Noel I*. Noel concurs with the commission's recommendation that his license be suspended for an additional thirty days. However, he contends we should not consider the discipline imposed in *Noel I* as prior discipline because the conduct giving rise to the present case occurred and was reported before the Board filed its complaint in *Noel I*.

"We craft appropriate sanctions based upon each case's unique circumstances," *Kennedy*, 837 N.W.2d at 673 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 239 (Iowa 2012)), but we also "try to achieve consistency with prior cases involving similar misconduct," *Stansberry*, 922 N.W.2d at 598. We consider several factors, including

> [t]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Turner*, 918 N.W.2d at 152 (alteration in original) (quoting *Morse*, 887 N.W.2d at 143). We also consider aggravating and mitigating circumstances. *Barry*, 908 N.W.2d at 227.

In other cases involving attorney neglect similar to Noel's, we have imposed discipline ranging from a public reprimand to a six-month suspension. *See Hedgecoth*, 862 N.W.2d at 365; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 66 (Iowa 2014); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 666 (Iowa 2012). But we have also imposed lengthier suspensions when "the neglect is one violation among many much more serious ones or occurs amidst aggravating circumstances." *Hedgecoth*, 862 N.W.2d at 365.

We disagree with the Board that *Noel I* is prior discipline. In order to be prior discipline, we must have found Noel's prior conduct violated our rules and sanctioned him before he committed the conduct giving rise to the present proceeding. *See State v. Freeman*, 705 N.W.2d 286, 291 (Iowa 2005) (requiring each offense to be complete as to a conviction and sentencing before commission of the next offense in order to qualify for the enhancement); *see also State v. Wade*, 467 N.W.2d 283, 285 (Iowa 1991). Although *Freeman* is a criminal case, we find it and its predecessor's reasoning is persuasive. We use prior discipline as an aggravating factor because an attorney did not learn from his or her prior misconduct. How can we use prior discipline for this purpose when we did not discipline an attorney prior to committing an act? Thus, for prior discipline to qualify as an aggravating factor, we must have disciplined an attorney before he or she commits the subsequent act.

We believe the timing of the present violations has bearing on the sanction. The acts that form the basis for this proceeding occurred from December 2015 to July 27, 2017. The acts forming the basis for *Noel I* occurred from July 2009 to August 2013. *Noel I*, 923 N.W.2d at 581. The Board filed the Complaint in *Noel I* on October 30, 2017. *Id.* On March 5, 2018, the Board amended its compliant in *Noel I*. *Id.* On July 18, the

commission entered its findings and recommendation in *Noel I*. *Id.* The Board waited until July 31 to file the complaint in the present case. We entered our decision in *Noel I* on February 15, 2019.

In *Iowa Supreme Court Attorney Disciplinary Board v. Moorman*, we found the attorney had committed various ethical violations between 2001 and 2004, including neglect in handling client matters. 729 N.W.2d 801, 803–05 (Iowa 2007). We also noted that we had previously suspended the attorney's license for two years following his neglect of a client matter in 2002. *Id.* at 804, 805. We imposed a public reprimand for the 2001–2004 conduct that was the basis of the present disciplinary proceeding even though the attorney's conduct would usually generate a suspension up to two years. *Id.* at 805–06. We reasoned,

> Had we been aware of the conduct that is the subject of this disciplinary proceeding at the time of our previous decision, it is unlikely this conduct would have caused us to suspend Moorman's license for longer than two years. Because Moorman's license is presently under suspension, we see no purpose served by ordering another suspension insofar as a deterrence or protection of the public is concerned.

*Id.* at 806.

Likewise, even if we had been aware of Noel's conduct that gave rise to the present case when we issued our decision in February of 2019, "it is unlikely this conduct would have caused us to suspend [Noel's] license for longer than [one] year[]." *Id.*; *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 814 N.W.2d 532, 542 (Iowa 2012). Therefore, we see no reason to enhance Noel's sanction in the present case or extend the suspension we imposed in *Noel I*. A public reprimand is the proper sanction. However, we remind Noel that future misconduct will result in harsher sanctions.

## V. Disposition.

We impose a public reprimand on Noel rather than the suspension recommended by the commission.  We tax the costs of this action to Noel pursuant to Iowa Court Rule 36.24(1).

**ATTORNEY REPRIMANDED.**